DECISION AND JOURNAL ENTRY
Appellant Otis McDay appeals from his convictions in the Summit County Court of Common Pleas on one count of engaging in a pattern of corrupt activity and one count of conspiracy to engage in a pattern of corrupt activity. We affirm.
On October 16, 1998, the Summit County Grand Jury rendered a one hundred twelve count indictment involving thirty-one defendants, including McDay. The indictment alleged that McDay committed one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A), and one count of conspiracy to engage in a pattern of corrupt activity, in violation of R.C.2923.01(A)(2) and 2923.32(A). McDay pleaded not guilty to the charges against him.
In the period prior to trial, McDay was initially represented by Frank Pignatelli. A jury trial was set for March 22, 1999. On March 3, 1999, Pignatelli moved to withdraw, stating that McDay had represented that he had retained other counsel. The trial court granted the motion on March 16, 1999. The following day, McDay's current counsel entered an appearance and filed several motions, including a motion for a bill of particulars and a motion to continue the trial.
On March 22, 1999, the first day of trial, the trial court overruled McDay's motions. McDay was tried jointly with three other defendants listed in the indictment — Danie Yeager, Bobby Petty, and Polly Petty. The trial lasted six days, with twenty-four witnesses testifying on behalf of the State. Nine of the witnesses were people who were named in the same indictment as the four defendants. McDay did not present any witnesses or evidence. After deliberating, the jury found McDay guilty of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity. The trial court imposed an aggregate prison term of eleven years. McDay appeals, assigning four errors.
 I.
McDay's first assignment of error states:
 APPELLANT WAS DENIED HIS FUNDAMENTAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
McDay argues that his first attorney, Frank Pignatelli, was ineffective. After entering an appearance, McDay's current counsel filed several motions, including a motion for a bill of particulars. On the first day of trial, McDay's counsel moved to sever McDay's trial from that of the three codefendants. The trial court denied the motions as untimely. McDay argues that Pignatelli should have filed those two motions within the time frames set by Crim.R. 7(E) and 12(C) and that the failure to make those motions deprived him of his constitutional right to effective assistance of counsel.[1] We disagree.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690,80 L.Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate. Statev. Smith (1985), 17 Ohio St.3d 98, 100.
First, Pignatelli's representation was not deficient for his failure to file a motion for a bill of particulars. This court has held that when the State permits open-file discovery, "a bill of particulars is not required." State v. Sarnescky (Feb. 12, 1986), Summit App. No. 12257, unreported, at 3. In the case at bar, the State permitted open-file discovery. Under such circumstances, Pignatelli was not ineffective for failing to seek a bill of particulars that would not be forthcoming.
Second, we find that McDay was not prejudiced by Pignatelli's failure to file a motion to sever prior to moving to withdraw as counsel. On December 4, 1998, the trial court issued an order stating "that defense counsel is granted leave to file a Motion to Sever and a Motion to Suppress." No time restriction was placed on the filing of the motion to sever. Pignatelli moved to withdraw on March 3, 1999, and represented that McDay had hired another attorney (presumably McDay's current counsel). The motion was granted on March 16, 1999; McDay's current counsel entered an appearance on March 17, 1999. However, current counsel did not move to sever until an oral motion was made on the first day of trial.
We discern nothing in the record that prevented McDay's current counsel from entering an appearance prior to the date that Pignatelli's motion to withdraw was granted. Further, there is nothing in the record to indicate that McDay's current counsel was prevented from filing a written motion to sever prior to trial. As such, we cannot say that the outcome of the proceeding would have been different but for Pignatelli's failure to file a motion to sever.
McDay has not demonstrated that he received ineffective assistance of counsel from Pignatelli. Accordingly, the first assignment of error is overruled.
 II.
McDay's second assignment of error states:
 APPELLANT WAS DENIED DUE PROCESS OF LAW PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE THE TRIAL COURT FAILED TO GRANT A CONTINUANCE.
McDay argues that the trial court abused its discretion by failing to grant his motion for a continuance. He contends that his current counsel needed more time to conduct discovery and prepare for trial and that the trial court erred by not continuing his trial. We disagree.
We review a trial court's decision to grant or deny a continuance under an abuse of discretion standard. State v. Unger
(1981), 67 Ohio St.2d 65, syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
In determining whether to grant or deny a motion for a continuance, the trial court must balance "any potential prejudice to a defendant [against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Unger, 67 Ohio St.2d at 67.
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
 Id. at 67-68.
In evaluating these factors, the record shows that no prior continuances had been requested. McDay's request was vague as to the length of continuance required, seeking to reschedule "to a later date at the court's convenience." The stated reason for the continuance was to enable counsel to conduct further discovery and trial preparation. However, it must also be noted, as was stated in addressing McDay's first assignment of error, that while current counsel did not enter an appearance until five days prior to trial, nothing prevented counsel from entering an appearance after Pignatelli moved to withdraw, thus giving McDay's counsel more time to conduct discovery and to prepare for trial. In addition, the inconvenience to all involved in the trial would not have been insignificant. On balance, we cannot say that the trial court's denial of McDay's motion was the product of passion, prejudice, partiality, or the like.
The trial court did not abuse its discretion by denying McDay's motion for a continuance. The second assignment of error is overruled.
 III.
McDay's third assignment of error states:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION TO DISMISS BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF ENGAGING IN A PATTERN OF CORRUPT ACTIVITY AND CONSPIRACY TO ENGAGE IN A PATTERN OF CORRUPT ACTIVITY.
McDay argues that the trial court should have granted his motion for acquittal. He argues that there was insufficient evidence for the jury to convict him of either engaging in a pattern of corrupt activity or conspiracy to engage in a pattern of corrupt activity. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant a motion for acquittal if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215,216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 A. Engaging in a Pattern of Corrupt Activity
We first address McDay's conviction on one count of engaging in a pattern of corrupt activity. R.C. 2923.32(A) states in relevant part:
 (1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * * .
 (2) No person, through a pattern of corrupt activity * * *, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property.
As used in the statute, "`[e]nterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).
 "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
R.C. 2923.31(E). At least one of the incidents of corrupt activity must be a felony. Id. The two or more incidents of corrupt activity need not be supported by convictions, but they must be proven beyond a reasonable doubt. State v.Burkitt (1993), 89 Ohio App.3d 214, 222-23.
R.C. 2923.31(I) defines what activities may be regarded as "corrupt activity." Included in the statute are incidents that would constitute
 [a]ny violation of section * * * 2925.03 * * * of the Revised Code [trafficking in a controlled substance], [or] any violation of section 2925.11 of the Revised Code [possession of a controlled substance] that is a felony of the first, second, third, or fourth degree and that occurs on or after July 1, 1996, * * * when the proceeds of the violation * * * or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, or any combination of violations described [above] when the total proceeds of the combination of violations * * * or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars[.]
R.C. 2923.31(I)(2)(c). Possession of cocaine is at least a fourth degree felony "[i]f the amount of the drug involved exceeds five grams * * * of cocaine that is not crack cocaine or exceeds one gram * * * of crack cocaine[.]" R.C.2925.11(C)(4)(b). Greater quantities of cocaine would result in felonies of greater degrees. See R.C. 2925.11(C)(4)(c)-(f). The sale of marijuana, in quantities equal to or greater than 200 grams but less than 1000 grams, is a fourth degree felony. R.C. 2925.03(A) and (C)(3)(c).
The evidence before the jury consisted of the following: Ned Spragling testified that on December 4, 1997, while acting as a confidential informant, he purchased 10.22 grams of crack cocaine from McDay. There was no testimony as to the price paid for the crack cocaine or the value of crack cocaine. Frank Kocis testified that on one occasion he saw McDay and codefendant Bobby Petty sitting together with approximately one-half kilogram[2]
of cocaine in a plastic bag on a table in front of them. There was ample testimony that powder cocaine was sold for more than $500 an ounce. Brian Barnes testified as to one occurrence involving Petty and McDay: "One day in particular [Petty] was trying to get marijuana. [McDay] was there and had a whole bunch of money, and they left and [Petty] came back with weed and there was a lot of weed." Barnes stated that the marijuana that Petty brought back was "[o]ver a pound, at least." Several other witnesses testified that McDay sold cocaine and marijuana to Petty but did not specify quantities. There was also testimony that marijuana had been purchased for $300 to $500 per pound.
Upon reviewing the record, we find that McDay's conviction was supported by sufficient evidence. In order to sustain a conviction for engaging in a pattern of corrupt activity, the two (or more) incidents of corrupt activity must have been proven to involve contraband with a value that exceeded $500 for each incident of corrupt activity. In the case at bar, there was evidence that McDay possessed one-half kilogram of cocaine and sold crack cocaine to Spragling. As to the occurrence involving marijuana, the logical inference is that McDay sold the marijuana to Petty. There was testimony that the value of more than one pound[3] of marijuana could exceed $500. As such, there was sufficient testimony of at least two incidents of corrupt activity, with the value of the contraband involved in each exceeding $500.
McDay argues that he did not "possess" the bag of cocaine but was merely in the presence of the bag in Petty's house. We disagree. Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2925.01(K). "Possession may be actual or constructive." State v.Barr (1993), 86 Ohio App.3d 227, 235. Constructive possession requires that an individual exercises dominion or control over an object, even if the individual does not have the object in his physical possession. Id. "Circumstantial evidence that the defendant was located very close to readily usable drugs may support a conclusion that the defendant had constructive possession. Ownership of the controlled substance need not be established, and possession may be individual or joint." (Citations omitted.) State v. Gibson (May 6, 1998), Summit App. No. 18540, unreported, at 4-5.
The evidence in the case at bar reveals that McDay was sitting with Petty in close proximity to a bag containing a large amount of powder cocaine. McDay appeared to be "`conscious of the presence of the [cocaine].'" State v. Thomas (1995), 107 Ohio App.3d 239,244, quoting State v. Hankerson (1982), 70 Ohio St.2d 87,91. Frank Kocis testified that McDay and Petty asked whether he (Kocis) had any marijuana. We conclude that there was sufficient evidence to demonstrate beyond a reasonable doubt that McDay possessed the bag of cocaine.
Viewing the evidence in a light most favorable to the State, there was sufficient evidence for the jury to find that McDay engaged in a pattern of corrupt activity. Therefore, the trial court did not err by overruling McDay's motion for acquittal under Crim.R. 29 on this count.
B. Conspiracy to Engage in a Pattern of Corrupt Activity
McDay was also convicted of one count of conspiracy to engage in a pattern of corrupt activity. R.C. 2923.01(A)(2) states: "No person, with purpose to commit or to promote or facilitate the commission of * * * engaging in a pattern of corrupt activity * * * shall * * * [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of * * * the specified offense." R.C. 2923.01(B) further requires that
 [n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.
 "[A]n overt act is an open act, done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." State v. Papp
(1980), 68 Ohio App.2d 21, 23.
Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence to support McDay's conspiracy conviction.[4] There was abundant evidence that McDay was the supplier of Bobby Petty, thereby engaging in conduct that facilitated the commission of engaging in a pattern of corrupt activity. When McDay's house was searched by police, officers found two large bottles containing inositol (a powder that is a known agent for "cutting" cocaine[5]) and several plastic baggies. Both the possession of cocaine (while sitting with Petty) and the sale of crack cocaine to Spragling were overt acts in furtherance of the conspiracy. Therefore, the trial court did not err by overruling McDay's motion for acquittal as to the conspiracy count.
 C. Summary
The trial court correctly denied McDay's motion for acquittal. The third assignment of error is overruled.
 IV.
McDay's fourth assignment of error states:
 THE VERDICTS RETURNED WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
McDay argues that both convictions were against the manifest weight of the evidence. He contends that little of the testimony at trial related to him and that the credibility of the witnesses was in question. His arguments are not well taken.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Several witnesses testified as to McDay's involvement in the drug ring at issue here. Many of them were also charged in the indictment against McDay. Through extensive cross-examination of the witnesses, the jury was fully informed of the criminal dealings and background of Spragling, Kocis, Barnes, and all of the other coconspirator witnesses. The determination of the credibility of witnesses is primarily within the province of the jury. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury was entitled to believe the testimony of the State's witnesses. This is not a case where the evidence weighs heavily in McDay's favor. The fourth assignment of error is overruled.
McDay's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 __________________________ WILLIAM G. BATCHELDER
FOR THE COURT, BATCHELDER, P. J., CARR, J., CONCURS.
[1] McDay also has asserted that Pignatelli was ineffective because he failed to file seven other pre-trial motions. However, McDay has only specifically addressed the motions for a bill of particulars and to sever and has not argued the merits of the other seven motions separately. McDay has also apparently conceded that there is no genuine issue as to the other seven motions, as evidenced by the following statement in his brief: "Granted, the bulk of the Motions were general and pro forma in nature, filed to preserve whatever issues could be preserved at the time the current counsel entered an appearance in this case. Appellant acknowledges that prior counsel's failure to file the discovery motions in a timely manner are likely to be considered harmless error."
[2] One-half kilogram, or 500 grams, equals 17.65 ounces.
[3] One pound equals 453.6 grams.
[4] In a footnote, McDay argues that two statements admitted into evidence were impermissible hearsay. However, McDay does not separately assign as error the admission of these statements, as required under App.R. 12(A)(2) and 16(A)(3) and (7). Hence, we decline to address those arguments.
[5] "Cutting" is a process whereby another substance is mixed with cocaine, extending the quantity of cocaine but reducing its purity.