OPINION
Defendant-appellant Terrence Brown appeals the August 6, 2001 Judgment Entry of the Stark County Court of Common Pleas which imposed sentence for appellant's conviction for one count of trafficking in cocaine, and three counts of possession of cocaine. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On May 11, 2001, the Canton Police Department executed a search warrant for Benny McCulley at the residence of 928 Allen Page Drive, SE, Apt. 8, in Canton, Ohio. This search warrant authorized the police to search the residence and any person present at the residence. When the police entered the apartment, they found appellant lying with a woman on a couch in the living room. There was another woman located in the northeast bedroom. When the officers searched appellant they discovered a small baggie of marijuana, a pair of hemostats, three rocks of crack cocaine, and $264 on appellant's person.
The officers continued their search into the southeast bedroom. In the bedroom, the officers located a bullet proof vest and a 32 caliber Derringer located in between the mattress and box spring. Further, on the dresser, the officers found a Foot Action coupon made out to appellant, a polaroid photograph of appellant, and two pieces of crack cocaine. The officers also found a digital scale in the room. Hanging on the dresser, the officers found a black windbreaker which contained 110 pieces of crack cocaine. When the officers searched a laundry basket near the dresser, they found clothing which appeared to be the same clothing appellant was wearing in the polaroid photograph found on the dresser.
Appellant admitted to the police he had purchased the Derringer gun and bullet proof vest from a man in Columbus, Ohio.
Appellant was arrested on May 11, 2001. On May 31, 2001, the Stark County Grand Jury indicted appellant with trafficking in cocaine, in violation of R.C. 2925.03(A)(2); possession of cocaine, in violation of R.C. 2925.011(A); possession of cocaine, in violation of R.C. 2925.11(A), a felony of the fifth degree; and having weapons under disability in violation of R.C. 2923.13(A)(3), a felony of the fifth degree. Appellant plead not guilty at his June 8, 2001 arraignment and the matter was scheduled for trial.
On July 13, 2001, appellant's trial counsel filed a Motion to Withdraw. On July 18, 2001, appellant's trial counsel filed a Supplemental Motion for Leave to Withdraw. In a July 19, 2001 Judgment Entry, both of these motions were denied without hearing. The matter proceeded to a jury trial on July 30, 2001.
At trial, appellant presented two witnesses, each of whom stated appellant did not reside in the residence where the search warrant was executed.
After hearing all the evidence, the jury found appellant guilty on all counts. Appellant had filed a motion to sever before trial with regard to one count of having weapons under a disability. After the trial, appellant entered a plea of no contest to the criminal charge of having weapons under a disability and was found guilty by the court.
In an August 6, 2001 Sentencing Entry, the trial court sentenced appellant to eight years in prison for trafficking in cocaine, eight years for possession of cocaine, twelve months for the two possession of cocaine counts, and twelve months in prison for having a weapon while under a disability. The trial court ordered each of the counts to be served concurrently.
It is from this judgment entry appellant prosecutes this appeal, assigning the following errors for our review:
 I TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED TRIAL COUNSEL'S MOTION TO WITHDRAW AS DEFENDANT'S ATTORNEY WITHOUT HOLDING A HEARING ON THE MATTER.
 II. THE PROSECUTING ATTORNEY COMMITTED PROSECUTORIAL MISCONDUCT WHEN HE FAILED TO TURN OVER DISCOVERABLE MATERIALS TO APPELLANT'S TRIAL COUNSEL BEFORE THE TRIAL STARTED.
 III APPELLANT'S CONVICTION FOR TRAFFICKING IN COCAINE, THREE COUNTS OF POSSESSION OF COCAINE, AND HAVING WEAPONS UNDER DISABILITY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 IV. APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 I
In appellant's first assignment of error, he maintains the trial court erred in denying his trial counsel's motion to withdraw without holding a hearing. Specifically, appellant maintains he was denied his absolute right to have counsel of his choice to represent him or his absolute right to represent himself during his criminal trial. Appellant asserts the trial court was required to inquire on the record as to the merits of appellant's complaint, citing State v. Gibson (1976), 45 Ohio St.2d 366, for the proposition that if counsel is retained, the trial court is required to give a defendant a clear and educated choice between proceeding with retained counsel or proceeding pro se. We disagree with appellant's contentions.
In Gibson, the Ohio Supreme Court held the Sixth Amendment, as made applicable to the States by the Fourteenth Amendment, guarantees a defendant in a state criminal trial an independent constitutional right of self representation permitting that defendant to proceed to defend himself without counsel when a defendant voluntarily, and knowingly, and intelligently elects to do so. Id. at syllabus, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525. In order to establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether appellant fully understood and intelligently relinquishes that right. Id. at 2.
In Gibson, the trial court set the trial to commence April 15, 1974. On that date, the defendant appeared before the court with counsel asking to be heard. Id. at 400. During the course of the hearing, the defendant told the court he had decided he did not wish currently retained counsel to represent him. Id. The trial court refused to release the retained counsel until the defendant had obtained another lawyer. Id.
On the day of trial, appellant appeared before the trial court stating he did not wish to proceed with his retained counsel. Id. at 401. The trial court, after an extended colloquy with the defendant, detailing the perils of proceeding pro se, permitted appellant to proceed pro se and ordered appellant's retained counsel to stay in the courtroom, although not at the counsel table. Id. The Supreme Court found the trial court's colloquy and instruction to the defendant was adequate, and after being so advised, the defendant knowingly, and intelligently waived his right to counsel. Id. at 407.
We find little similarity between the facts of Gibson, and the matter sub judice. In this case, appellant's trial counsel filed a motion for leave to withdraw on July 13, 2001. This motion stated, in pertinent part:
 "Pursuant to Crim.R. 47, counsel for the defendant, * * * move [sic] this honorable court for leave to withdraw as attorney of record for [appellants].
 "As grounds for this motion, counsel recites [appellant's] lack of confidence in representing him. Additionally, [appellant] has received counsel's inattention in providing him with discovery from the State. Mistrust of counsel and lack of confidence evidences in effective assistance of counsel * * *."
On July 18, 2001, appellant's trial counsel filed a supplemental motion for leave to withdraw. This motion stated, in relevant part:
 "As further grounds for this motion, counsel recites that various witnesses have failed to appear for scheduled conferences. * * *"
On July 19, 2001, the trial court filed a Judgment Entry stating:
 "Counsel's request to withdraw as the attorney of record is denied. If the defendant retains different counsel and is prepared to go to trial on July 30, 2001, the court will re-visit this issue."
Appellant took no further action on this issue. The record demonstrates appellant did not retain new counsel, and did not move for a continuance to retain new counsel. Further, appellant failed to raise this issue at the start of trial.
Further, unlike Gibson, the record indicates appellant never indicated to the court he wanted to represent himself. In fact, the record seems to demonstrate it was appellant's trial counsel who wished to be excused as opposed to appellant asserting a right to fire retained counsel. An appellate court need not consider an error which a party complaining of the trial court's judgment could have called but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Williams (1977),51 Ohio St.2d 112 syllabus para. 1. Because appellant did not request to represent himself and because he failed to request new counsel on the day of trial, we find he was waived this issue on appeal.
Appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, he maintains the prosecuting attorney committed prosecutorial misconduct when he failed to turn over discoverable materials to appellant's trial counsel before the trial started.
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, cert.denied 112 L.Ed.2d 596; State v. Smith (1984), 14 Ohio St.3d 13.
The Sixth Amendment to the U.S. Constitution, as made applicable to the States by the Fourteenth Amendment, guarantees that a defendant in a criminal proceeding ". . . shall enjoy the right . . . to have the assistance of counsel for his defense." See also: Section 10, Article I, Ohio Constitution. Pursuant to said Amendment, the U.S. Supreme Court has held that an indigent defendant in a criminal proceeding in state court has the right to have counsel appointed for him. Gideon v.Wainwright (1963), 372 U.S. 335.
On June 8, 2001, appellant filed a request for discovery from the State. The request included evidence of all relevant written or recorded statements made by appellant, any written summaries of any oral statements made by appellant to a prosecuting attorney or a law enforcement officer, and any books, papers, documents photographs or tangible objects available to or within the possession of the State which were material to the preparation of the defense or intended for use by the prosecution as evidence. Apparently, the prosecuting attorney failed to inform appellant's trial counsel of statements appellant made to the police. Further, the prosecuting attorney failed to turn over information about a .9 weapon found at the scene. Although appellant's brief states this information was held by the police officers, the record is murky on the topic.
Crim.R. 16 provides in relevant part:
"(E) Regulation of discovery
 "(3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
At the beginning of the trial, the following discussion took place on the record:
 "THE COURT: on the record in Case Number 2001CRO688. Apparently on Monday, July 30, the State of Ohio became aware for the first time of certain statements made, allegedly made by Mr. Brown to arresting Officer Lancaster. The State of Ohio was in receipt of those this morning and advised Mr. Mackey that those statements were made.
 Mr. Mackey went out and had a conversation with Officer Lancaster, in which this question and answer type of interview was related to Mr. Mackey, and as a result of that he filed motion to prohibit the state from introducing into evidence any and all statements of Mr. Brown.
 "Now, my understanding, State of Ohio, is that there have been some statements Mr. Brown made that were provided in normal course of discovery, correct?
"MR. VANCE: That's correct.
"THE COURT: And that there were * * *
"* * *
 "* * * these new statements, I don't know what they were. What were they, what were the new statements?
 "MR. MACKEY: Ah, well, he questioned him and got a lot of information in support of the claim.
 "THE COURT: Go ahead. So, John, tell me what the conversations were. What words were uttered.
"MR. MACKEY: They would have, they were words that —
"THE COURT: She's got to hear you.
 "MR. MACKEY: They were words that would be supportive of the allegations set forth in the indictment.
 "THE COURT: Well, I'm going to sustain your motion to, in regard to any statements that were not provided to you in discovery are, are going to be ruled inadmissible.
And officer Lancaster is to be advised that this, "question and answer session," you're not going to ask him about it and he's not to bring it up on his own. And the only statement that are going to be admitted will be those admitted by, provided in the normal course of discovery.
"In regards to your argument that had you known these statements. were made, you may have done other things, you know, that's too tenuous, Mr. Mackey. And if at the end of the trial you want to present something, I'll take it into consideration there. But I don't know anything about it. Tr. at 4-8."
The trial court excluded any evidence which was not provided in discovery. Accordingly, we turn our attention to the State of Ohio's Response to Appellant's Request for Discovery filed June 19, 2001. In response to appellant's second request, written summaries of any oral statements made by appellant or co-defendants to either a prosecuting attorney or law enforcement officer, the State responded:
 "Defendant's statement: defendant stated he purchased guns and body armor from a male that transports them here from Columbus, Ohio. He further stated that he specifically purchased a nine millimeter handgun and a 32 cal. Derringer."
Appellant cites two separate portions of the transcript to support his claim of prosecutorial misconduct. The first was during the testimony of Det. Michael Reese of the Canton City Police Dept. Vice Unit. During Det. Reese's testimony, the following exchange took place on the record:
 "A. When at headquarters filling out the Form 8 for the county booking procedure he was asked if he had employment. He said —
"MR. MACKEY: Object.
"A. — no.
"THE COURT: Overruled.
 "BY MR. VANCE: When the defendant was taken to headquarters, Detective, did you have an opportunity to speak with the defendant?
"A. Yes, I did.
 "Q. And did you take any measures, ah, before you spoke with him? Did you read the defendant his Miranda rights?
"MR. MACKEY: Object.
 "THE COURT: Overruled on the basis of prior discussions, unless I'm incorrect and you can approach, but — Mr. Mackey, am I correct that this has been divulged?
"MR. MACKEY: I'm sorry, Your Honor?
"THE COURT: Approach for a minute.
 "(A conference was held at the bench outside the hearing of the jury.)
"THE COURT: So you know about these statements?
"MR. MACKEY: Yes, Judge.
"THE COURT: Overruled.
"(End of side bar conference.)
"BY MR. VANCE:
 "Q. Detective, was there anyone else present with you during this interview?
"A. Yes.
 "Q. Did the defendant make any statements to you at this time regarding any of the items you have before you?
"A. Yes, he did.
"Q. And what statements —
"MR. MACKEY: Object.
"THE COURT: Overruled.
"MR. MACKEY: Object.
"THE COURT: Overruled.
"BY MR. VANCE:
"Q. What statements did he make?
"MR. MACKEY: Continuing objection.
"THE COURT: Noted, and overruled.
 "A. He stated that he did purchase body armor and a .9 millimeter handgun off an individual that lived in Columbus.
"Q. Any other weaponry he mentioned was purchased?
"MR. MACKEY: object.
THE COURT: Overruled.
"A. Could you repeat the question?
 "Q. Did he mention anything else regarding this individual from Columbus?
"A. No, he did not.
 "Q. Did the defendant mention whether or not he had purchased any other weapons from this individual in Columbus?
 "MR. MACKEY: Your Honor, I'm going to ask for a continuing objection so as not to interrupt the prosecutor.
 "THE COURT: I understand. And I'll strike the .9 millimeter and I'll allow you to go on. But answer the question. Detective, do you understand the question being asked?
"THE WITNESS: He wants to know if there are any other —
 "THE COURT: No. We — Ask the question again. And if you don't understand it, tell me and I'll step in.
"THE WITNESS: Yes, Sir.
"BY MR. VANCE:
 "Q. Did the defendant state whether — did the defendant state that he bought that .32 caliber Derringer from that guy from Columbus?
 "A. He had stated he had obtained that from a different person.
"Q. From a different person?
"A. Yes, sir.
"Q. Not the same individual as the body armor?
"A. Correct.
"Q. And when did he make this statement to you?
"A. At the police headquarters.
"Q. And was this after he was read his Miranda rights?
"A. Yes, it was.
"* * *
 "MR. MACKEY: For record purposes, this is the end of my continuing objection to the conversation. Tr. at 127-132."
At this juncture, we note the trial court's original admonition to the prosecutor was directed only at Det. Lancaster. However, appellant, in his brief to this Court, takes issue with all evidence admitted relative to the .9 millimeter gun. It is obvious from the record the trial court struck Det. Reese's testimony with regard to the .9 millimeter, essentially because the trial court believed this information had not been provided to appellant during discovery. However, as noted above, a summary of the defendant's statement relative to the .9 millimeter gun was clearly provided in the discovery. Accordingly, we find this portion of appellant's assignment of error to be without merit.
Appellant next contends information elicited from Det. Lancaster in his testimony constituted prosecutorial misconduct. During Det. Lancaster's testimony, the following exchange took place on the record:
 "Q. Detective, what did you do first as you began speaking with the defendant?
 "A. Well, when I brought Mr. Brown down to our police department interview room, first thing did —
"MR. MACKEY: Well, object.
"THE COURT: Overruled.
 "A. First thing I did, I interviewed, I read Mr. Brown his constitutional rights, which he stated he understood.
 "MR. MACKEY: I'm going to have a continuing objection noted on the record, so — "THE COURT: All right.Why don't you just approach, so I can just decide what it is now.
"MR. MACKEY: Yes, sir.
 "(A conference was held at the bench outside the hearing of the jury.)
 "THE COURT: This goes with the issue yesterday about the statements the defendant allegedly made that were not revealed until yesterday. I ruled that those were inadmissible. The state has advised the Court that the following dialogue is going to be those statements that were provided to Mr. Mackey and his witness has been instructed not to talk about statements that weren't provided and have been ruled inadmissible. So I'll note your objection just on the second part of your motion there and overrule it. We well continue under that operation.
 "MR. MACKEY: Yes, sir.When you go to a different subject, I'll interrupt you and just say end of continuing objection. * * *
"BY MR. VANCE:
 "Q. Detective, after you read the defendant his Miranda warnings, did he make any statements to you that day?
"A. Yes, he did, sir.
"Q. What were those statements?
 "A. After I read him his constitutional rights, I also asked Detective Reese to enter the room with me to hear what the subject had to say. He stated that the items that were found inside his apartment — like a bullet proof vest that was found, he said he had purchased this bullet proof vest from an individual that brings them up from the Columbus area and brings them up to Canton. He also stated this person brings up firearms up here, which this individual purchased a .9 millimeter from this individual.
 "THE COURT: Could you please slow down your speech just a little bit.
 "A. He also stated there was a .32 Derringer pistol, two shot, that was also found inside that apartment that day. He stated that he had also purchased that firearm from an individual here in the Canton area.
"MR. VANCE: That's all I have, Your Honor. Thank you.
"THE COURT: Mr. Mackey, anything, sir?
"MR. MACKEY: I have nothing. Tr. at 160-161, 163-166."
Finally, at the close of the State's evidence, the following exchange took place with regard to Det. Lancaster's testimony:
 "MR. VANCE: And, lastly, Your Honor, State's Exhibit Number 22, the body armor bullet proof vest located between the mattress and box springs in the southeast bedroom, the body armor the defendant claimed was his, he purchased from an individual from Columbus.
"THE COURT: Mr. Mackey.
"MR. MACKEY: Object.
 "THE COURT: Court is going to overrule and admit it for the same purpose I admitted the Derringer.
"* * *
 "THE COURT: Mr. Mackey, there was also a statement made in which you objected and at the time I overruled it when there was discussion about the purchase of a .9 millimeter gun. Um, I think I later indicated when it was brought up again, you objected and I struck it. However, if you wish — I will do whatever you wish. If you want me to instruct the jury that there was testimony on a .9 millimeter, ah, it was inappropriate and I'm telling you to disregard it or I will leave it alone, but I will give a curative or I will not depending on your request.
"MR. MACKEY: I would ask for a curative instruction.
"THE COURT: You would ask for it?
"MR. MACKEY: Yes, sir.
 "THE COURT: Then I'll do that at the beginning, before you begin your witnesses.
"* * *
 "THE COURT: Before Mr. Mackey calls his first witness, I will tell you, ladies and gentlemen, that yesterday there was testimony concerning a .9 millimeter handgun. That testimony was inappropriate and I ordered it stricken yesterday and I will tell you today that you are to disregard any recall of that testimony and not consider it for any purpose whatsoever in your deliberations. Tr. at 219-220, 222."
We can find nothing in this record to indicate the State intentionally elicited or presented evidence which had been previously excluded by the trial court. Although not specifically excluded by the trial court, both parties seem to concede evidence regarding a .9 millimeter weapon found at the scene was inappropriately admitted. However, as noted above, the State did provide discovery with regard to the .9 millimeter gun purchased from an individual in Columbus. Accordingly, from the state of the record, we can find no evidence to support appellant's claim for prosecutorial misconduct. Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, he maintains each of his convictions was against the manifest and sufficiency of the evidence. We disagree.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Although appellant states his convictions for each count were against the manifest weight of the evidence and based upon insufficient evidence, appellant only maintains the State failed to prove he had possession of the cocaine found in the bedroom. Accordingly, we address only that claim.
Appellant was charged with trafficking in cocaine, in violation of R.C. 2925.11(C)(4)(d). The statute states, in relevant part:
 "(A) No person shall knowingly obtain, possess, or use a controlled substance.
"* * *
 "(C) Whoever violates division (A) of this section is guilty of one of the following:
"* * *
 "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
"* * *
 "(d) If the amount of the drug involved * * * equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."
Appellant was also charged with trafficking in crack cocaine based upon the evidence found in the southeast bedroom of the apartment. The crime of trafficking in crack cocaine is defined in R.C. 2925.03 as follows:
"(A) No person shall knowingly do any of the following:
`* * *
 "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
R.C. 2925.01(K) defines possession as follows:
 "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
Possession may be actual or constructive. State v. Haynes (1971),25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787; State v. Hankerson
(1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband.State v. Wolery (1976), 46 Ohio St.2d 316, 332, 75 O.O.2d 366,348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Taylor (1997), 78 Ohio St.3d 15, 676 N.E.2d 82. Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. Statev. Barr (1993), 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248;Wolery, supra; State v. Bell (May 14, 1998), Cuyahoga App. No. 72691, unreported, 1998 WL 241955.
The issue herein is whether the State could prove appellant had possession of the cocaine contained in the black windbreaker hanging from the dresser in the bedroom. R.C. 2925.01(K) defines possession as "Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
Appellant was found lying on a couch with a woman in the living room of the Allen Page Drive apartment. Upon searching appellant, police found a small baggie of marijuana, a pair of hemostats, three rocks of crack cocaine, and $264 on appellant's person. In the southeast bedroom, officers found a bullet proof vest and a 32 caliber Derringer located in between the mattress and box spring. The jury heard evidence appellant purchased these two items from an individual in Columbus. Also in the southeast bedroom, the officers found a Foot Action coupon made out to appellant, a poloroid photograph of appellant from appellant's birthday celebration, and two pieces of crack cocaine. The officers also found clothing in the room which appeared to be the same clothing appellant was wearing in the polaroid photograph found on the dresser. Further, as noted above, Det. Lancaster testified appellant had stated this was his apartment. We find this evidence, although circumstantial, sufficient to demonstrate appellant had constructive possession of items in the bedroom, including the windbreaker hanging on the dresser containing 110 pieces of crack cocaine. In light of this, we cannot find the jury lost its way and created such a manifest miscarriage of justice as to require a reversal.
Accordingly, appellant's fourth assignment of error is overruled.
 IV
In appellant's fifth assignment of error, he maintains he was deprived of the effective assistance of counsel. We disagree.
The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373; State v. Combs, supra.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
Appellant contends his relationship with his trial counsel was full of mistrust and lack of confidence. Appellant supports this contention by pointing his trial counsel's motion to withdraw and supplemental motion. Without this trust and confidence, appellant argues his trial counsel was unable to effectively represent him. Further, appellant contends the fact witnesses failed to appear for scheduled conferences demonstrated his attorney's lack of preparation and concern for appellant's case.
We find each of appellant's assertions to be speculative. The record does not demonstrate how any perceived communication difficulties with appellant's trial counsel resulted in an error causing prejudice to appellant. Mistrust and lack of confidence do not equate to ineffective assistance of counsel.
Finally, appellant maintains his trial counsel failed to object to evidence which had been deemed inadmissible by the trial court. Appellant does not specify exactly what evidence was inadmissible or where in the record the alleged failure to object occurred. Accordingly, appellant cannot demonstrate prejudice arising from the admission of the unnamed evidence.
Appellant's fifth assignment of error is overruled.
The August 6, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: HOFFMAN, P.J. WISE, J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.