The STATE of Ohio, Appellee,

v.

BARR, Appellant.

[Cite as *State v. Barr* (1993), 86 Ohio App.3d 227.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61361.

Decided Feb. 8, 1993.

228

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *William D. Ailer,* Assistant Prosecuting Attorney, for appellee.

*Warren McClelland,* Assistant Public Defender, for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant Dianne Barr timely appeals her convictions on two counts of drug trafficking in violation of R.C. 2925.03(A)(1) and R.C. 2925.03(A)(4), one count of permitting drug abuse in violation of R.C. 2925.13, and one count of possession of criminal tools in violation of R.C. 2923.24. Following a jury trial, the appellant was sentenced to one and one-half years on count one, three to fifteen years on count two, and eighteen months on each of counts three and four.

Prior to trial, the appellant filed a motion to suppress evidence, alleging that the police lacked probable cause to seize a plastic bag from the appellant's shirt pocket. A suppression hearing was held, during which the state presented the testimony of Detective Beaman of the Cleveland Police Department.

Detective Beaman testified that on October 30, 1989, at approximately 6:30 p.m., he and his partner, Detective Hasan, were monitoring a high drug-trafficking area near Curtis Court housing projects and East 55th Street in the city of Cleveland. As Detective Beaman and his partner were sitting in an unmarked, undercover vehicle with dark tinted windows, he observed what he believed to be a drug transaction between the appellant and a male.

According to Detective Beaman's testimony, the male walked up to the appellant, there was a short conversation between them, he gave her money, she reached into her shirt pocket, pulled out a plastic bag, reached in and gave him something out of the bag. At this point, Detective Beaman and his partner exited their unmarked vehicle and identified themselves as police officers. As the detectives exited their vehicle, the male took off running through the Curtis Court housing projects, and the appellant stuck the plastic bag in her shirt pocket. Further, the appellant turned and walked briskly toward a maroon-colored auto and did not initially comply with the detectives' request to stop.

The detectives approached the appellant and asked her for identification. She informed them that she did not have any identification. Detective Beaman testified that he could still see the plastic bag that he and his partner had observed the appellant place back in her shirt pocket. He asked her what was in her shirt pocket, and she responded, "Nothing." He then removed the plastic bag that was protruding from her shirt pocket. The bag contained a white powdery residue which the detectives suspected was cocaine. The appellant was then read her rights and placed under arrest. The detectives asked her if the maroon auto she was observed walking toward was hers. She replied, "No," she knew nothing about the car, it was not hers, and she was not driving it.

After the appellant was secured, the detectives approached the maroon auto. They found all the windows were down and the keys were in the auto. They discovered a purse in the back seat. They also found a white McDonald's bag on

the ground right next to the driver's door. Written on the McDonald's bag was "2600." Detective Beaman testified that from his previous experience with the drug trade, it is a common practice that the bulk of the drugs are placed in little bags near the area where the drugs are being sold. This is done so that in the event the seller is caught he does not have a large quantity of drugs on his person.

Detective Beaman testified that the purse discovered in the auto contained the wallet and identification cards of Mary Matthews. Matthews was contacted, and she provided a written statement which indicated that she owned the maroon auto and she had loaned it to the appellant on October 30, 1989.

On cross-examination, Detective Beaman testified that there was no attempt to conceal the transaction between the appellant and the unidentified male. He further testified that he observed the male give the appellant money although he was unable to determine the amount of money transferred. He also observed the appellant reach into the plastic bag and hand the male something in return. Finally, Detective Beaman testified that when he approached the appellant, approximately one and one-half to two inches of the plastic bag was protruding from the appellant's shirt pocket.

After hearing the testimony of Detective Beaman, the trial court overruled the motion to suppress, stating that the bag was in plain view and that there was probable cause to believe that a drug transaction had taken place.

Following the denial of the motion to suppress, the appellant's trial was commenced. Detective Sahir Hasan of the Cleveland Police Department was the first witness to testify on behalf of the state. Hasan stated that he and Detective Beaman were at the Curtis Apartments in an undercover vehicle when they observed a male exchange what appeared to be money for drugs. After receiving the money, the appellant reached into her shirt pocket, pulled out a plastic bag, reached inside and gave the male something from the bag. When the officers left their vehicle, the male fled and the appellant walked at a fast pace toward a maroon car. The appellant was stopped by the officers and at that point Detective Beaman removed the plastic bag, which was sticking out of appellant's shirt pocket. The bag contained a white residue. Before appellant was placed under arrest she was asked to remove any other items she had from her pockets. It was then discovered that she had $420 on her person.

Detective Hasan testified that at the time the appellant was stopped she was walking toward a specific maroon automobile located in the parking lot. Further, by the time she was stopped she was in so close to the maroon auto that she could have reached out and touched it. Although there were other automobiles scattered throughout the parking lot, Detective Hasan testified that she did not walk toward any of the other autos. As a result Detective Hasan and his partner

approached the maroon automobile. Detective Hasan discovered a crumpled-up McDonald's bag outside the auto beneath the driver's door. He noticed that there was a dollar sign and the number "2600" written on the bag. Inside the bag was a small cardboard box. Upon further examination it was discovered that the box contained ten aluminum foil packets each containing ten rocks of suspected crack cocaine for a total of one hundred rocks.

The state then presented the testimony of Detective Beaman, who reiterated his prior testimony from the suppression hearing.

Mary Matthews, the owner of the maroon automobile, testified that she had known the appellant and appellant's mother for years. She testified that on October 30, 1989, she loaned her car to the appellant so that the appellant could drive to a doctor's appointment. She also testified that she forgot to remove her purse from the car prior to loaning it to the appellant.

The next witness to testify for the state was Cynthia Lewis, a forensic technician for the Cleveland Police Department. Lewis testified that the substance found in the McDonald's bag tested positive for cocaine and amounted to more than three times the bulk amount in unit doses. She testified that a total of ninety-three rocks were found in aluminum packets and several other loose rocks were found in the McDonald's bag. She further testified that the unit dose for cocaine is twenty-five pieces.

On cross-examination, Lewis admitted that in terms of weight the bulk amount is ten grams and the total weight of the amount recovered was 15.62 grams. She further testified that she randomly tested approximately three of the ten rocks contained in each of the aluminum packets and each of the rocks tested positive for cocaine.

The state then rested and defense counsel moved for acquittal pursuant to Crim.R. 29. The motion was denied by the trial court.

Buddy Pendleton, appellant's father, testified for the defense. Pendleton stated that Mary Matthews has a drug trafficking conviction for the sale of marijuana. He also stated that Matthews telephoned him on the day of appellant's arrest and offered to pay the appellant $500 if the appellant would say that she was driving Matthews' car.

The appellant testified on her own behalf. She stated that on the date in question she was talking with a male who owed her $15. After the male handed her the $15 she was approached by the Cleveland Police Detectives. She was ordered to empty her pockets and Detective Beaman pulled out a sandwich bag which she had in her shirt pocket. The appellant asserted she had nothing to do with the maroon car in the parking lot and that she had seen Mary Matthews in

the car shortly before being stopped by the police. She further testified that she had nothing to do with the McDonald's bag discovered outside the driver's door.

On cross-examination the appellant stated that the $420 found on her person belonged to her mother and she planned to use the money to pay her mother's bills at a nearby money exchange.

Defense counsel renewed its motion for acquittal pursuant to Crim.R. 29. The motion was again denied by the trial court.

Initially, we will address the appellant's third assignment of error. It provides:

"The trial court erred by overruling appellant's motion to suppress evidence and thereby violated appellant's right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution."

In the third assignment of error the appellant asserts that the trial court erred in denying her motion to suppress physical evidence. Specifically, she argues that the state failed to establish the third requirement of the "plain view" doctrine that "the incriminating nature of the evidence was immediately apparent." For the following reasons, appellant's argument lacks merit.

Searches conducted outside the judicial process, without prior approval of a judge or magistrate, are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2031–2032, 29 L.Ed.2d 564, 575–576; *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. If an article is in plain view and neither its observation nor seizure involves an invasion of privacy, the "plain view" doctrine constitutes an exception to the general rule that warrantless searches are presumptively unreasonable. *Horton v. California* (1990), 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 120.

In order for evidence to be seized under the "plain view" exception, the state must show that (1) the initial intrusion which afforded the authorities the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities. *State v. Williams* (1978), 55 Ohio St.2d 82, 9 O.O.3d 81, 377 N.E.2d 1013, syllabus. Moreover, the "immediately apparent" requirement of the "plain view" doctrine is satisfied when police have probable cause to associate an object with criminal activity. *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, paragraph three of the syllabus.

On appeal, the appellant does not contest the establishment of the first two prongs of the *Williams* three-prong analysis. Thus, we will focus our

analysis on whether the third prong of the *Williams* "plain view" analysis was established.

In the instant case, the arresting detectives observed a male approach the appellant in an area known for drug trafficking activity. The two conversed briefly and the male gave the appellant money. The appellant then reached into her shirt pocket, pulled out a clear plastic bag, reached into the bag, and transferred something out of the bag to the male. Upon stopping the appellant, the detectives observed the clear plastic bag protruding from the appellant's shirt pocket.

In light of the above observations we conclude that the detectives possessed the required probable cause to associate the visible plastic bag with criminal activity. As such, the "immediately apparent" requirement was satisfied. *Halczyszak, supra.* Accordingly, the appellant's third assignment of error is overruled.

Next, we will address the appellant's second assignment of error. It provides:

"Appellant's conviction under R.C. 2925.03 violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution."

In the second assignment of error, the appellant argues that the definition of "unit dose" in R.C. 2925.01(F) is unconstitutionally vague. Appellant's argument lacks merit.

This court has previously addressed appellant's argument and has specifically found that the statutory definition of "unit dose" is not unconstitutionally vague. *State v. Webster* (May 21, 1981), Cuyahoga App. No. 42778, unreported, 1981 WL 4982; *State v. Rivera* (Apr. 22, 1982), Cuyahoga App. No. 43975, unreported, 1982 WL 5314. Thus, the appellant's argument lacks merit and the second assignment of error is overruled.

Appellant's first assignment of error provides:

"The trial court erred and denied Dianne Barr her right to due process of law as guaranteed by the United States and Ohio Constitutions when she was convicted of possession of cocaine, in an amount equal to or exceeding three times the bulk amount."

Appellant initially contends that the state did not present sufficient evidence to support her conviction for possession of cocaine exceeding three times the bulk amount and possession of criminal tools. Specifically, appellant argues the state failed to prove appellant "possessed" the cocaine and criminal tools. Appellant's argument lacks merit.

 A reviewing court will not reverse a verdict where there is substantial evidence upon which the trier of fact could reasonably conclude that all the elements of an offense have been proved beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. The test for sufficiency review is set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720:

"As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weight the evidence." *Martin, supra,* citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573.

"Possession" is defined in R.C. 2925.01(L) as follows:

" 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

 Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787. To place a defendant in constructive possession, the evidence must demonstrate that the defendant was able to exercise dominion or control over the items. *State v. Wolery* (1976), 46 Ohio St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351. Moreover, readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs. *State v. Pruitt* (1984), 18 Ohio App.3d 50, 18 OBR 163, 480 N.E.2d 499.

 In the instant case the arresting detectives testified that they observed a male exchange what appeared to be money for drugs in a high drug-trafficking area. The detectives observed the appellant, after receiving the money, reach into her shirt pocket, pull out a clear plastic bag, reach inside, and hand something to the male. As the detectives exited their undercover vehicle, the unidentified male fled and the appellant walked quickly toward a maroon car. Detective Hasan testified that the appellant was stopped while she was walking toward a specific maroon automobile located within the parking lot. Further, he indicated that by the time she was stopped she could have reached out and touched the maroon auto.

Upon stopping the appellant, the officers observed the plastic bag in plain view sticking out of the appellant's shirt pocket. Examination of the bag revealed it contained a white powdery residue. Furthermore, the sum of $420 was recovered from the appellant's pockets, and the detectives discovered one hundred rocks of crack cocaine in a McDonald's bag outside the maroon auto beneath the driver's door. Finally, the testimony of Mary Matthews established that she was the owner of the maroon auto in question and earlier in the day she had loaned her car to the appellant.

Based upon our review of the record and construing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have properly found that the appellant was in constructive possession of the approximately one hundred rocks of crack cocaine contained in the McDonald's bag. Accordingly, the state presented sufficient evidence supporting the reasonable inference that the appellant possessed cocaine in excess of three times the bulk amount and possessed criminal tools.

Next, appellant asserts there was insufficient evidence to support a conviction for use of a motor vehicle in the commission of a felony drug offense. Specifically, appellant argues there was no evidence linking the maroon automobile to the illegal drugs. This argument lacks merit.

R.C. 2925.13 provides in relevant part:

"(A) No person, being the owner, operator, or person in charge of a locomotive, watercraft, aircraft, or other vehicles as defined in division (A) of section 4501.01 of the Revised Code, shall knowingly permit such vehicle to be used for commission of a felony drug abuse offense."

In the instant case Mary Matthews, the owner of the maroon automobile, testified that on October 30, 1989, she loaned her car to the appellant so that the appellant could drive to a doctor's appointment. She further testified that she was never at or near the Curtis Court Apartments on October 30, 1989.

In light of the testimony of Mary Matthews and construing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have properly found that the maroon vehicle which was being driven by the appellant on the day in question was used for the commission of a felony drug offense.

Consistent with the foregoing, the appellant's first assignment of error is overruled.

*Judgment affirmed.*

Dyke, P.J., concurs.

Blackmon, J., dissents.

Blackmon, Judge, dissenting.

I respectfully dissent from the majority's decision that the plain view doctrine applies to the facts of this case. Particularly, I believe that the majority has created an interpretation of the plain view doctrine which is inconsistent with the historical definition of plain view as well as an incorrect application of some of the current tenets of the plain view doctrine.

In order to fully present my position, I have taken the liberty to restate some of the facts in this case—not because I disagree with the majority's assessment of them, but because I approach the facts differently. It is this different assessment of the facts that forms the essence of my disagreement with the majority's use of the plain view doctrine to justify the warrantless seizure of the plastic bag from Dianne Barr's shirt pocket. On a larger scale, both factual and legal, our differences are underscored because of my difficulty with the concept that the end result justifies the means used, which is exactly what the majority is saying in this case.

The facts as I see them may be divided into two categories of events: observations before the search, and the full exploratory search that followed. The police officers' observations before the search revealed that Barr was located in an area known for "drug trafficking activity." She was approached by an unidentified male who handed her something after they talked. The police indicated that the item was money. Thereafter, Barr reached into her shirt pocket, retrieved a plastic bag, and from the plastic bag she gave the male something. The police officer stated during his testimony that he was unable to identify what was contained in the plastic bag or what was handed to the male; however, he suspected drugs. The officer who observed these events approached Barr and observed protruding from her shirt pocket the plastic bag. He questioned her regarding the contents, and she responded that it was nothing. The officer, unpersuaded by Barr's response, conducted a full exploratory search, removed the plastic bag from her shirt pocket, searched the bag, and located inside the bag a substance later identified as crack cocaine. It is my position that after Barr informed the officer that she had nothing in her pocket, the officer was precluded from any further inquiry and was precluded from reaching into her shirt pocket retrieving the plastic bag, and searching the plastic bag.

Historically, it is the law that an officer is not automatically entitled to seize an item without a warrant even though he suspects that it is contraband or evidence of a crime. However, he may seize an item if he has a warrant or if one of the exceptions to the warrant requirement applies or if the object is in plain view. In

the *Barr* case, the facts indicate that the officer did not have a warrant. Therefore, in order for the seizure to be valid it must fall under one of the recognized exceptions to the warrant requirement or the object must be in plain view. *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502.

Here, the majority concluded that plain view applied. Specifically, the majority held that the "immediately apparent" element of the plain view doctrine was established because the behavior of Barr was "so strongly suggestive" of a drug transaction that it was permissible for the officer to stop Barr and retrieve from her person the protruding object. In arriving at this holding, the majority concluded that observation before the search was so strongly suggestive of a drug transaction that the officer possessed the required probable cause to associate the plastic bag with criminal activity.

The majority cited *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, an Ohio Supreme Court case that held the following: " * * * we believe that the circumstances discovered upon entry to appellees' premises were so strongly suggestive that the premises [were] not an honest auto body shop but, an illegal chop shop, that the plain view doctrine was applicable and no further warrant was required." *Id.* at 308, 25 OBR at 366, 496 N.E.2d at 934. In *Halczyszak* the Supreme Court equated probable cause with its "so strongly suggestive" standard, thus extending the plain view doctrine in cases where a search warrant was used as a prior justification for access to the object. This approach by the Supreme Court gives further support to the *Texas v. Brown* definition of plain view, which is that plain view is an extension of whatever the prior justification for an officer's access to an object may be. In the *Barr* case there was neither a search warrant nor a prior justification for access to the object.

Yet the majority, in the *Barr* case, treated the "so strongly suggestive" standard of *Halczyszak* the same as "the immediately apparent" element of the plain view doctrine. I disagree with this interpretation because it gives the police the authority to reach into a person's pocket to seize an object which is believed to be connected with the suggestive behavior. By adopting this concept, the majority has given *Halczyszak* greater reach than intended by the Ohio Supreme Court and, at the same time, given police automatic authority to seize anything that they observe so long as it suggests criminal activity. This approach is a far weaker standard than the principle of reasonable articulable suspicion and totally contrary to the probable cause standard as stated in *Arizona v. Hicks* (1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347.

In *Arizona v. Hicks, supra,* the United States Supreme Court held that the plain view doctrine did not apply in a seizure when the police moved the object in order to search for the incriminating nature of the item. The United States

Supreme Court held that the officer lacked probable cause, and the officer's reasonable suspicion was insufficient to justify the seizure under plain view. In the *Barr* case the standard is even lower. The officer needs only a strong suggestion of the incriminating nature of the object, which is not the historical or current definition of plain view.

If this had been a routine patrol encounter of a suspicious person, defensible under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, obviously, the results would have been different. Instead, it was a full-blown search, which the plain view doctrine should not be used to justify. The item in the officers' view was a plastic bag; the incriminating evidence was the crack cocaine that was contained therein and not "immediately apparent" to the officer until he reached into Barr's shirt pocket and then only after he removed the contents of the bag. It was the crack cocaine that was incriminating, not the plastic bag. Any other approach results in a muddy definition of probable cause as well as defining probable cause exclusively as suggestive criminal behavior.

The majority of course concludes that there is probable cause to believe that the plastic bag is connected with criminal activity because of the suggestive criminal behavior of Barr. Clearly, the plastic bag may have given rise to a suspicion and, by some accounts, it might even be a reasonable one. However, I fail to see the plastic bag as constituting probable cause, unless the majority intended to give great weight to the environmental element, that is, the "high incidence of drug trafficking activity." If this is the majority's intent, the ultimate effect of this position is that an officer who observes a person with a plastic bag while in a high drug-traffic area is permitted to reach into the pocket of the person who is being observed and retrieve anything that is protruding from the person's pocket. Besides being incorrect, this position is dangerous. It is incorrect because on these facts, at best, the officer had a suspicion, perhaps a reasonable one. Under *Arizona v. Hicks, supra*, the officer is required to have probable cause, reasonable suspicion having been rejected by the *Arizona* court. It is dangerous because it equates the environmental factor with probable cause; even *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, did not go that far.

Clearly, the environmental factor played a significant role in the majority's decision, although the initial activity of Barr and the male was not necessarily illegal. Had these individuals been standing, walking, talking, exchanging something, and possessing a plastic bag in any area of Ohio not labelled an area known for drug-trafficking activity, I doubt that the search and seizure would have occurred, at least not in this fashion.

It is important to note that in this case, the state did not prove nor was it required to prove that the area was indeed an area with "high incidence of drug

trafficking." It merely alleged that the area was known for "drug trafficking activity."

Consequently, I am of the opinion that the possession of a plastic bag in a neighborhood defined as "known for drug trafficking" is not *per se* criminal behavior. I reach this conclusion because of the officer's testimony that he did not see what was in the bag but suspected cocaine. A suspicion is not sufficient to justify a plain view seizure. It must be immediately apparent to the officer that the bag contained cocaine, which means the officer must have probable cause. I believe strongly in this approach in order to avoid the prejudice that "feeds the belief that it is safe to assume the criminality of any black person behaving suspiciously" who lives in a neighborhood labelled as a high drug-trafficking area. See "When Police Shoot Police," *N.Y. Times* (Nov. 21, 1992), Editorial page.

Since I would have resolved this issue by concluding that the plain view doctrine does not apply, I also conclude that the subsequent searches and seizures of the purse and the car were tainted.