OPINION
{¶ 1} Defendant-appellant Michael Talbott appeals his conviction in the Licking County Court of Common Pleas on one count of possession of crack cocaine. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 23, 2002, the Licking County Grand Jury indicted appellant on one count of possession of crack cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree. At his arraignment on June 3, 2002, appellant entered a plea of not guilty to the charge contained in the indictment.
 {¶ 3} Subsequently, a jury trial commenced on November 7, 2002. The following evidence was adduced at trial.
 {¶ 4} On May 19, 2002, Patrolman Art Minton of the Newark Police Department assisted Patrolman Eric Cook in a traffic stop of a truck at approximately 10:30 p.m. The truck had initially failed to stop when the officer had attempted to pull the truck over by activating his cruiser's lights and sirens. After Patrolman Cook took appellant, who was the driver of the vehicle, out of the same, Patrolman Minton positioned himself in such a manner so that he could easily view the vehicle's passenger. According to Patrolman Minton, the passenger "was just sitting there in the passenger side all the way against the door. I could clearly see his head the entire time." Transcript at 71. The passenger never left Patrolman Minton's sight.
 {¶ 5} After appellant was arrested, the two officers had the passenger, who had remained in the truck for about an hour, exit the vehicle and patted him down. Patrolmen Minton and Cook then did an inventory of the truck. When asked what he found during the inventory, Patrolman Minton responded as follows:
 {¶ 6} "A. On the — I guess I'm going to draw a picture here of the bench seat, pickup truck, which would be the steering wheel. Driver sits here. Passenger sits here obviously. On those bench seats on a pickup truck, there's certain seat covers that have a big pocket that run the entire front of the seat. It's not up on top or on the side, it's right under here where your knees would be. And I located a — I saw the corner of a plastic baggie sticking out of that pocket to the extreme left-hand side of the vehicle right there. It couldn't have been any farther left unless it had been put on the floor. It was as far as it could get." Transcript at 74. The baggie, which Patrolman took possession of, contained crack cocaine. The following testimony was adduced when Patrolman Minton was asked what appellant said in regards to the baggie:
 {¶ 7} "A. He — he was — my — he was sort of vague, but he indicated that the drugs were not his. He indicated that he wasn't sure how they got in there. I asked him if there was anybody else drive your vehicle. He said no. I said have you lent it to anybody that could have put this in here without your knowledge. He said not that I'm aware of. He talked some more, things that I didn't think were relevant to the case, and then eventually he said — made a statement that it's possible that some of his friends who may use drugs or traffic in drugs left that in his vehicle, but the bag wasn't his. So I asked him about fingerprints, well, if I print the bag, will your prints come back on the bag. He told me no. A little bit more discussion, and then he said, well, the prints could come back on the bag, but it's not mine." Transcript at 78. No latent fingerprints were obtained from the plastic baggie.
 {¶ 8} James Burchard, Jr., who was the passenger in the truck, also testified at trial. Burchard testified that on the day in question, appellant was speeding when the two saw a police officer. Appellant, who had opened up a container of beer, then gave the beer to Burchard and told him to dispose of the same. Burchard, however, refused, telling appellant that he "didn't want anything to do with it." Transcript at 53. After Patrolman Cook stopped the vehicle, appellant told Burchard that he did not have a driver's license and asked Burchard for his license I.D. Burchard "told him no." Transcript at 54. Burchard further testified that he did not become aware that there was "something in the vehicle" until "the cop told me" and also testified that the cocaine was not his and that he had never had possession of the same. Transcript at 58.
 {¶ 9} Appellant, who testified in his own defense, testified that the truck was his truck. Appellant also testified that he had never seen the crack cocaine until the day of trial, that the crack cocaine was not his and that he had never handled the same, and that he did not put the crack cocaine in the truck. Appellant also admitted, during questioning, that while he initially told Patrolman Minton that he drove the truck, after the crack cocaine had been discovered, he told the police that "other people had driven the truck. " Transcript at 99. Results of a urine test indicated that appellant did not have cocaine in his system at the time of his arrest.
 {¶ 10} At the conclusion of the evidence and the end of deliberations, the jury, on November 7, 2002, found appellant guilty of possession of crack cocaine in violation of R.C. 2925.11(A)(C)(4)(a). As memorialized in a Judgment Entry filed on November 10, 2002, appellant was placed on three years of community control.
 {¶ 11} It is from his conviction that appellant now appeals, raising the following assignment of error:
 {¶ 12} "THE CONVICTION OF THE DEFENDANT-APPELLANT IS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE TO WARRANT THE SAME."
 I {¶ 13} Appellant, in his sole assignment of error, argues that his conviction for possession of crack cocaine is not supported by sufficient credible evidence. Appellant specifically contends that the State failed to introduce sufficient evidence to prove, beyond a reasonable doubt, that appellant "knowingly" possessed the crack cocaine found in the truck. We disagree.
 {¶ 14} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 15} R.C. 2925.11 provides, in relevant part, as follows: "(A) [n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.01(K) defines possession as follows: " `Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264, 267 N.E.2d 787; State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery
(1976), 46 Ohio St.2d 316, 332,, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly,137 Ohio App.3d 134, 738 N.E.2d 93. Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. State v. Barr (1993), 86 Ohio App.3d 227,235, 620 N.E.2d 242, 247-248.
 {¶ 16} As is set forth in the statement of facts, appellant failed to stop when the police attempted to initiate a traffic stop and only stopped after a chase ensued. After the truck was stopped, a baggie of crack cocaine was found in a pocket located in front of the driver's seat of the same. Appellant, who admitted that he owned the truck, initially testified that he drove the truck but later, after the cocaine was discovered, indicated to the officer that "other people" had driven the same. Transcript at 99. Before being stopped by the officer, appellant had asked Burchard, his passenger, to dispose of a container of beer that appellant had opened and also had asked Burchard for his driver's license. At trial, Burchard testified that he had no knowledge of the cocaine in the truck and that the same was not his. After his arrest, appellant admitted that his fingerprints may be on the baggie of crack cocaine.
 {¶ 17} Based on the foregoing, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly possessed the crack cocaine found in his truck. From the evidence adduced at trial, the jury could have found that appellant was located in very close proximity to the crack cocaine so as to be able to exercise dominion or control over the same.
 {¶ 18} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 19} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.
By: Edwards, J., Hoffman, P.J., and Boggins, J. concur.