JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Todd Barger ("appellant"), appeals his convictions for drug possession. For the reasons set forth below, we affirm.
 {¶ 2} On November 15, 2005, the Cuyahoga County Grand Jury indicted appellant on five counts: count one charged possession of drugs, methamphetamine, in violation of R.C. 2925.11; count two alleged drug trafficking in violation of R.C. 2925.03; count three alleged possession of drugs, psylocyn and psilocybin, in violation of R.C. 2925.11; count four alleged drug trafficking in violation of R.C. 2925.03; and count five alleged possession of criminal tools in violation of R.C. 2923.24. Appellant pled not guilty to all charges in the indictment.
 {¶ 3} The trial of this matter began on February 12, 2007. At trial, the state presented the testimony of the following individuals from the Cuyahoga County Sheriff's Department: Detective Chris Miller, Sergeant Miguel Caraballo, Detective Theresa Shaffer, Detective Jeff Hirko, Detective Donald Gerome and Detective Anthony Quirino. Additionally, the state presented Detective Morgan Nelson of the Drug Enforcement Administration Task Force ("DEA") for examination. The testimony of the aforementioned individuals revealed the following facts.
 {¶ 4} On June 15, 2005, the Brookpark police and DEA executed a search warrant of appellant's garage. There they discovered a methamphetamine lab. Initially, the detectives smelled a strong odor from the garage. They also noticed a large industrial fan blowing air from the garage to the outside. While inside the *Page 3 
garage, detectives discovered numerous tools used to manufacture methamphetamine. In addition, they found a number of television monitors connected to surveillance cameras.
 {¶ 5} The methamphetamine lab was dismantled and the strong odor dissipated. After a thorough search of the garage, the detectives removed anything incriminating that was in plain view or in a storage device. Furthermore, the detectives removed or dismantled all the surveillance cameras in the garage.
 {¶ 6} Thereafter, the detectives issued a warrant for the arrest of appellant's brother, Tony. They did not arrest appellant for the lab. At that time, the detectives believed appellant that he knew nothing of the lab.
 {¶ 7} A few weeks later, during the early morning hours of July 13, 2005, Cleveland police received a phone call that a strong chemical smell was emanating from appellant's garage. While conducting surveillance on the garage, the police heard a loud motor-like noise coming from the garage. Additionally, the police noticed a vehicle parked in the driveway. They ran the license plates and discovered an arrest warrant for domestic violence for Randy Barger. Also a caution warning was issued should police approach.
 {¶ 8} Accordingly, around 2:00 a.m., the detectives decided to knock on the garage door. Upon approaching, the detectives noticed the man door to the garage open and an industrial fan blowing air from the garage to the outside. Additionally, the officers smelled a strong chemical odor suspected to be methamphetamine *Page 4 
coming from the garage. At that point, the detectives identified themselves while knocking on the man door. When there was no response, the detectives entered the open door.
 {¶ 9} Upon entering, the detectives saw two men, appellant and his brother, Randy Barger, inside. The detectives informed appellant they had received complaints. Appellant told the detectives of the incident three weeks prior and gave his consent to search the garage.
 {¶ 10} While in the garage, the detectives discovered a black and silver briefcase. In the briefcase was a digital scale, three packets of methamphetamine and various other objects typically used in the production of the methamphetamine. Additionally, on a workbench in the center of the garage where appellant and his brother were standing, detectives found a small metal box that contained methamphetamine and psilocybin. Behind the bench on the ground were several little foil pieces with methamphetamine burn residue upon them. The search also revealed a black backpack that contained 17 empty packets of Sudafed, a common item used to make methamphetamine. Also, Sergeant Caraballo testified that a big wheel found in the garage was older-looking. Finally, the detectives discovered an operable video surveillance monitor that was connected to a camera directed at the front of the garage. Shortly thereafter, appellant was arrested.
 {¶ 11} At the conclusion of the state's evidence, appellant moved for acquittal pursuant to Crim.R. 29(A) on all counts. The court granted his motion as to count *Page 5 
four only and denied his requests as to the remaining counts. The court also deleted ammunition as one of the items listed as criminal tools in count five.
 {¶ 12} Appellant then proceeded to present the testimony of Brookpark Police Detective Timothy Robinson and his brother, Randy Barger. He also testified on his own behalf. A summary of their testimony follows.
 {¶ 13} Appellant maintained that while he was on a week-long camping trip, his twin brother, Tony, created the meth lab. He claims he only became aware of the lab when, shortly after returning home, the Brookpark police and DEA appeared at his house with a search warrant on June 15, 2005. The detectives believed appellant at that time and he was not arrested.
 {¶ 14} Appellant further testified that during the search on June 15, 2005, he spoke with Detective Robinson, who informed him that should he find any other drugs or paraphernalia to contact the police. Immediately after the search, appellant began discovering suspicious objects. Appellant, Detective Robinson, and Randy Barger testified that appellant brought a number of suspicious objects to the Brookpark police station on June 17, 2005.
 {¶ 15} After that occasion, appellant maintains that he continued to find objects in his garage and began placing them in the black and silver suitcase with the intention of submitting the objects to the police after completing a thorough cleaning of the garage. Appellant further testified that he found the metal box containing methamphetamine and psilocybin prior to the search on July 13, 2005, and set it *Page 6 
aside to provide to the police at a later date. Appellant maintained that he was not aware of the incriminating nature of the drugs.
 {¶ 16} Appellant also asserted that he was with his brother putting together a new big wheel for his niece during the early morning hours of July 13, 2005 when police searched his garage. He testified that the industrial fan blowing on the night of July 13, 2005 was acting as an exhaust, expelling heat, not odors, from the garage. Finally, appellant contended that the surveillance camera was operating for security reasons.
 {¶ 17} Randy Barger testified that he and his brother were assembling a new big wheel on July 13, 2005. He further testified that appellant had the camera in his garage for security reasons. Finally, Randy admitted that he had several previous felony convictions.
 {¶ 18} At the conclusion of his evidence, appellant again made a motion for acquittal, which the trial court denied.
 {¶ 19} On February 16, 2007, the jury found appellant guilty of possession of drugs as charged in counts one and three, but found him not guilty of drug trafficking as charged in count two and not guilty of possession of criminal tools as charged in count five. On March 15, 2007, the trial court sentenced him to one year and six months of community control sanctions.
 {¶ 20} Appellant now appeals his convictions and submits two assignments of error for our review. Appellant's first assignment of error states: *Page 7 
 {¶ 21} "Defendant's convictions for drug possession were not supported by sufficient evidence as required by Due Process in violation of U.S. Constitution Amendment XIV and Crim.R. 29."
 {¶ 22} Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 23} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394.
 {¶ 24} In the instant action, appellant was charged and convicted of drug possession. R.C. 2925.11 states in pertinent part as follows:
 {¶ 25} "(A) No person shall knowingly obtain, possess, or use a controlled *Page 8 
substance."
 {¶ 26} "Possession" is defined in R.C. 2925.01(K) as follows:
 {¶ 27} "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 28} Possession may be actual or constructive. State v.Hankerson (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130;State v. Haynes (1971), 25 Ohio St.2d 264, 267 N.E.2d 787. With regard to the sufficiency of evidence supporting a conviction for drug possession, Ohio courts have determined that constructive possession may be established where the drugs and/or contraband are readily useable and in close proximity to an accused. State v. Barr (1993),86 Ohio App.3d 227, 235, 620 N.E.2d 242; State v. Pruitt (1984), 18 Ohio App.3d 50, 58,480 N.E.2d 499. Furthermore, knowledge of illegal goods on one's property is also sufficient to establish constructive possession.State v. Hankerson, supra at 92; State v. Pearson (Mar. 17, 1983), Cuyahoga App. No. 44550.
 {¶ 29} Applying the foregoing, we note that there is no dispute that methamphetamine and psilocybin were seized from appellant's garage on July 13, 2005 and that those drugs were readily accessible and found in close proximity to appellant when the police entered the garage. Rather, appellant argues he did not *Page 9 
have the requisite knowledge that he possessed illegal substances. The state's evidence, however, demonstrates the contrary.
 {¶ 30} The term "knowingly" is defined in R.C. 2910.22(B) and states:
 {¶ 31} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 32} First, the state's evidence established that the metal box holding methamphetamine and psilocybin was discovered on the workbench that appellant and Randy were standing next to when the police first entered the garage. Appellant maintains that he found the box and its suspicious contents while cleaning the garage and was intending to turn them into the police at a later date. This statement alone indicates that he was aware that the powdery substance and mushrooms wereprobably illegal.
 {¶ 33} Nevertheless, other evidence presented by the state also indicates appellant's knowledge of the illegal substances. Sergeant Caraballo testified that a poignant odor emanated from the garage on July 13, 2005, which was indicative of methamphetamine. This is compelling considering Detective Nelson's testimony that he dismantled the methamphetamine lab during the first search of the garage on June 15, 2005, which left no odor thereafter. Additionally, upon approaching the garage on July 13, 2005, the detectives noticed a large industrial fan blowing air *Page 10 
from the garage to the outside. Inside the garage, detectives not only discovered the methamphetamine and psilocybin in the metal box near appellant, but pieces of foil with methamphetamine burn residue on the ground nearby as well.
 {¶ 34} Appellant's knowledge of illegal activity was also established when the police found an operational surveillance camera directed at the driveway leading up to the garage that was connected to a monitor in the garage. Appellant admitted that he reinstalled this camera after all the cameras were removed or dismantled during the first search of the garage on June 15, 2005.
 {¶ 35} Finally, appellant and Randy maintained that they were assembling a new big wheel around 2:00 a.m. on July 13, 2005. Sergeant Caraballo, however, testified that the big wheel was not new and was rather old-looking. Construing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have concluded that appellant knowingly possessed methamphetamine and psilocybin. Accordingly, we are unable to conclude that appellant's convictions were supported by insufficient evidence. Appellant's first assignment of error is overruled.
 {¶ 36} Appellant's second assignment of error states:
 {¶ 37} "Defendant's convictions for drug possession were against the manifest weight of the evidence."
 {¶ 38} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as *Page 11 
follows:
 {¶ 39} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 40} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 41} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 42} In this matter, we cannot conclude that the court lost its way. Appellant *Page 12 
maintains that his behavior throughout the searches is inconsistent with one being aware he possesses illegal narcotics. In support, appellant argues that he consented to the detectives searching his garage on July 13, 2005. Additionally, appellant argues that prior to that search, he delivered suspicious items he discovered in his garage to the police. Moreover, he discovered the drugs in the metal box without knowing their illegal nature prior to the search. Each of these actions, appellant maintains, are inconsistent with him knowingly possessing illegal narcotics.
 {¶ 43} Appellant's assertion that he was unaware of the illegal nature of the drugs is quickly dispelled by his own admission that he intended to turn the drugs in the metal box over to the police at a later date because he found the substances suspicious. As previously stated, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2910.22(B).
 {¶ 44} Furthermore, appellant's assertions are further discredited by the detectives' testimony that a strong odor of methamphetamine emanated from the garage during the early morning hours of July 13, 2005, that a large industrial fan was blowing air from the garage to the outside, that the methamphetamine and psilocybin were discovered in a metal box located next to appellant, and pieces of foil containing methamphetamine burn residue on the floor nearby. This coupled with the testimony that methamphetamine was also discovered in a briefcase with appellant's name upon it weighs heavily toward conviction. *Page 13 
 {¶ 45} Additionally, Sergeant Caraballo testified that the big wheel appellant was allegedly assembling with Randy on that night "[d]idn't appear to be brand new." (T. 159.) Finally, appellant admitted that an operating surveillance camera connected to the garage and directed towards the driveway was connected to a monitor inside the garage. Accordingly, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot disagree with the court's resolution. Therefore, appellant's second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MELODY J. STEWART, P.J., and MARY J. BOYLE, J., CONCUR. *Page 1