[Cite as *State v. Jefferson*, 2026-Ohio-1257.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25-COA-021 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. 24-CRI-198 |
| PRESTON D. JEFFERSON | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: April 7, 2026 |

**BEFORE:** Andrew J. King; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** CHRISTOPHER R. TUNNELL, JAMES B. REESE III, for Plaintiff-Appellee; BRIAN A. SMITH, for Defendant-Appellant.

*King, P.J.*

{¶ 1} Defendant-Appellant, Preston D. Jefferson, appeals his July 15, 2025 convictions from the Ashland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 11, 2024, the Ashland County Grand Jury indicted Jefferson on one count of possession of cocaine with a major drug offender specification in violation of R.C. 2925.11 and 2941.1410.

{¶ 3} On November 6, 2024, in the same case, a bill of information charged Jefferson with one count of operating a vehicle while under the influence ("OVI") in violation of R.C. 4511.19.

{¶ 4}   A jury trial commenced on April 8, 2025.  The jury found Jefferson guilty of the two charges.  A sentencing hearing was held on July 14, 2025.  By judgment entry filed July 15, 2025, the trial court sentenced Jefferson to an aggregate term of eleven to sixteen and one-half years in prison.

{¶ 5}   Jefferson filed an appeal with the following assignment of error:

I

{¶ 6}   "APPELLANT'S CONVICTIONS, FOR BOTH POSSESSION OF COCAINE WITH A MAJOR DRUG OFFENDER SPECIFICATION AND FOR OPERATING A VEHICLE UNDER THE INFLUENCE, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 7}   In his sole assignment of error, Jefferson claims his convictions were against the manifest weight of the evidence.  We disagree.

{¶ 8}   On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).  *See also State v. Thompkins*, 78 Ohio St.3d 380 (1997).  In *Thompkins* at 387, quoting *Black's Law Dictionary* (6th Ed. 1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the

issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis in original.)

{¶ 9} In weighing the evidence, this court must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman,* 2012-Ohio-21790, ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge [or trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). *See also State v. Ramirez,* 2026-Ohio-1066, ¶ 8. "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard,* 2025-Ohio-161, ¶ 66 (5th Dist.). We note a manifest weight of the evidence claim should succeed "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

POSSESSION OF COCAINE WITH MAJOR DRUG OFFENDER SPECIFICATION

{¶ 10} Jefferson was convicted of possessing cocaine equal to or exceeding one hundred grams with a major drug offender specification in violation of R.C. 2925.11(A) and (C)(4)(f) and 2941.1410(A). R.C. 2925.11(A) states: "No person shall knowingly

obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2901.22(B) defines "knowingly" as:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 11} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Butler,* 42 Ohio St.3d 174, 176 (1989). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery,* 46 Ohio St.2d 316, 329 (1976). To establish constructive possession of illegal drugs, the State's evidence must demonstrate the defendant was able to exercise dominion and control over the contraband. *State v. Kuhn,* 2023-Ohio-2740, ¶ 18 (5th Dist.). Dominion and control may be proven by circumstantial evidence alone. *Id.,* citing *State v. Trembly,* 137 Ohio App.3d 134, 141 (8th Dist. 2000). Circumstantial evidence that a defendant was located in very close proximity to readily

usable drugs may show constructive possession. *Kuhn,* citing *State v. Barr,* 86 Ohio App.3d 227 (8th Dist. 1993). Circumstantial evidence is that which can be "inferred from reasonably and justifiability connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34 (1972). Circumstantial evidence is to be given the same weight and deference as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259 (1991).

{¶ 12} Jefferson argues the weight of the evidence failed to prove, beyond a reasonable doubt, that he had either actual or constructive possession of the cocaine found in his vehicle.

{¶ 13} Ohio State Highway Patrol Officer Andre Giordan testified to stopping Jefferson for vehicle and driving infractions around 1:00 a.m. T. at 96-100, 139-142. Upon speaking with Jefferson, Trooper Giordan conducted field sobriety tests. T. at 101-108, 146-151. Based upon the results, Trooper Giordan arrested Jefferson for OVI and ordered the vehicle towed. T. at 109. In order to tow the vehicle, Trooper Giordan was required to conduct an inventory search of the vehicle. *Id.*

{¶ 14} In searching the vehicle, Trooper Giordan found hundreds of "little tree air fresheners" in the vehicle, some still wrapped in the plastic, but many out of their wrappers. T. at 115, 152-153. Ten to fifteen were hanging from the rearview mirror. T. at 110, 115. Trooper Giordan testified many times individuals use the air fresheners in an attempt to hide the odor of narcotics. T. at 110-115. Trooper Giordan found "baseball-sized cocaine" in a compartment on the "passenger's side." T. at 115-116. He then testified to finding two "tear off baggies and narcotics" in the "driver's door pocket, right next to where Mr. Jefferson was sitting," one of which tested positive for cocaine. T. at 116. These two baggies were within Jefferson's hand reach. *Id.* Jefferson disputed that the cocaine

was his, as he had "just bought that truck two weeks ago." T. at 117. But a LEADS check verified Jefferson was the registered owner of the vehicle for three years. T. at 118, 162.

{¶ 15} Trooper Giordan was wearing a body camera and the video was played for the jury. T. at 119-120; State's Exhibit 1. On the video, Trooper Giordan is seen in the back passenger area behind the driver's side where he found the baseball-sized brick of cocaine in the "storage compartment going into the floor." T. at 129-130. On cross-examination, Trooper Giordan confirmed he found the "large amount of cocaine" in the compartment behind the "driver's side seat." T. at 153-154.

{¶ 16} The found "brick" was tested to be cocaine over one hundred grams. T. at 77, 80-81.; State's Exhibits 2 and 4.

{¶ 17} Jefferson argues Trooper Giordan's testimony was not credible because he was inconsistent as to where he found the baseball-sized cocaine i.e., the driver's door pocket or the passenger side. Any discrepancy was cleared up on cross-examination when Trooper Giordan was specifically questioned on the location and he confirmed to finding the cocaine in a compartment behind the driver's side seat. When reviewing the body camera footage with the jury, Trooper Giordan identified himself in the back passenger area on the driver's side of the vehicle finding the baseball-sized cocaine. Jefferson was the registered owner of the vehicle for three years and no one else was in the vehicle traveling with him. Evidence was presented to demonstrate that Jefferson was able to exercise dominion and control over the cocaine in his proximity and thus had constructive possession.

{¶ 18} Upon review, we find the greater amount of credible evidence sustains the conviction for the charge of possession of cocaine over one hundred grams.

OVI

{¶ 19} R.C. 4511.19(A)(1)(a) states: "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation . . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 20} Jefferson argues the weight of the evidence failed to prove, beyond a reasonable doubt, that he was impaired.

{¶ 21} Trooper Giordan testified to observing Jefferson commit traffic infractions including marked lanes violation, speeding, and weaving. T. at 96- 98, 139-140. Upon stopping the vehicle and speaking with Jefferson, Trooper Giordan observed Jefferson to be nervous and perspiring, with dilated pupils; he detected an odor of alcohol from the vehicle. T. at 101. After Jefferson exited the vehicle, Trooper Giordan observed "glassy, bloodshot eyes, pupils still dilated" and detected an alcoholic beverage "coming off of his breath." T. at 102, 147. Based on his observations, Trooper Giordan followed up with field sobriety testing. Trooper Giordan was trained to conduct the testing. T. at 106-107. He observed four out of six clues on the Horizontal Gaze Nystagmus test, five out of eight clues on the Walk and Turn test, and four out of four clues on the One Leg Stand test. T. at 103-108, 149-151. At that point, Trooper Giordan placed Jefferson under arrest for OVI. T. at 109, 124.

{¶ 22} Trooper Giordan observed traffic infractions, glassy, bloodshot eyes, and dilated pupils, and detected an odor of alcohol on Jefferson's breath. Jefferson exhibited many clues on the field sobriety tests. Evidence was presented to demonstrate that Jefferson was driving while impaired.

{¶ 23} Upon review, we find the greater amount of credible evidence sustains the conviction for the charge of OVI.

{¶ 24} We do not find that the jury clearly lost its way in rendering its verdict; we do not find a manifest miscarriage of justice.

{¶ 25} The sole assignment of error is denied.

{¶ 26} For the reasons stated in our accompanying Opinion, the judgment of the Ashland County Court of Common Pleas is AFFIRMED.

{¶ 27} Costs to Appellant.

By: King, P.J.

Popham, J. and

Gormley, J. concur.