[Cite as *State v. McVey*, 2012-Ohio-2520.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Patricia A. Delaney, P.J. |
|  | : | W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 11CA0077 |
|  | : |  |
|  | : |  |
| DANIEL L. McVEY, II | : | O P I N I O N |
| Defendant-Appellant |  |  |


CHARACTER OF PROCEEDING:             Criminal Appeal from Licking County
                                     Court of Common Pleas Case No.
                                     10CR612

JUDGMENT:                            Affirmed

DATE OF JUDGMENT ENTRY:              June 4, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KENNETH W. OSWALT                     WILLIAM CRAMER
Licking County Prosecutor             470 Olde Worthington Road, Ste. 200
                                      Westerville, Ohio  43082
BY: CHRISTOPHER A. REAMER
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, Ohio  43055

*Edwards, J.*

{¶1} Defendant-appellant, Daniel McVey, appeals his conviction and sentence from the Licking County Court of Common Pleas on one count of weapons under disability and a firearm specification. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On October 29, 2010, the Licking County Grand Jury indicted appellant on one count of illegal manufacture of drugs (methamphetamine) in violation of R.C. 2925.04(A)(C)(3)(a), a felony of the second degree, one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A)(C)(1)(b), a felony of the third degree, one count of weapons under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, and one count of aggravated trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(1)(C)(1)(a), a felony of the fourth degree. The charge of aggravated trafficking in drugs was accompanied by a firearm specification. At his arraignment on November 9, 2011, appellant entered a plea of not guilty to the charges.

{¶3} Subsequently, a jury trial commenced on April 20, 2011. The following testimony was adduced at trial.

{¶4} Kris Kimble of the Central Ohio Drug Enforcement Task Force testified that he had worked with a confidential informant named Dino Thorpe. After Thorpe got into trouble for purchasing pseudo ephedrine, which is used in the manufacture of methamphetamine, and was charged with illegal assembly of chemicals, Thorpe became a confidential informant in exchange for a reduced sentence. Kimble testified that, on October 20, 2010, Thorpe was to make arranged buys from specified

individuals and that appellant originally was not one of those individuals. Kimble further testified that when he spoke with Thorpe on the phone, Thorpe told him that appellant was currently manufacturing methamphetamine at his residence. Kimble testified that he then conducted surveillance at appellant's house and that appellant drove to the residence of John Sampson at 30 Westview. The following is an excerpt from Kimble's testimony:

**{¶5}** "Q. What was your understanding - - it's actually owned by a John Sampson?

**{¶6}** "A. Where this took place, it is owned by John Sampson.

**{¶7}** "Q. What was your understanding what was going on at 30 Westview prior to this controlled buy?

**{¶8}** "A. The understanding we had was Dino was supposedly taking care of this residence for an individual who was currently incarcerated. That individual had given us permission to go inside, written and verbal, through the jail he was in, and our understanding from the CI [confidential informant] was there were several individuals in that residence with possible stolen property from a burglary." Transcript at 155-156.

**{¶9}** According to Kimble and to Detective Doug Bline, of the Newark Police Department, who was assigned to the Central Ohio Drug Enforcement Task Force, Thorpe had the keys to the Westview property.

**{¶10}** On cross-examination, Kimble testified that the maximum charge that Thorpe faced for illegal assembly of chemicals was eight years and that Thorpe was supposed to make a couple of buys from three individuals. Two of the buys were to be from Shane Huffman and two from Betty McVey, appellant's mother. Huffman was

present at the Westview address on the day that his buy took place.  Kimble further testified that Thorpe had told him that there were several other people in the house and that there had been situations in the past where they were trading and selling items with each other in Sampson's house.

{¶11} Dino Thorpe testified that he lived next door to 30 Westview, which was owned by John Sampson. Thorpe testified that, on October 20, 2010, Sampson was in jail and Thorpe was painting a building for him. According to Thorne, Sampson had asked him to watch over his house and feed his dogs while Sampson was in jail.

{¶12} Thorpe testified that there were other individuals in and out of Sampson's house, which was unlocked. He testified that Shane Huffman came and told him that Sampson had said that Huffman could stay there a couple of days. Thorne testified that, on October 20th, appellant was at the house along with Ron Fulk, Thorpe, a guy with Huffman and two girls in a green van.

{¶13} At trial, Thorpe testified that he had problems with drug addiction in the past and had been addicted to cocaine in the 1990s. He further testified that he had done methamphetamine until he found out he had cancer in July of 2010. Thorpe had been arrested for buying pseudo ephedrine pills after July and, in order to have his charges reduced, had entered into an agreement to become a confidential informant. He testified that the main target of the agreement was Shane Huffman and that he thought that appellant's mother also was a target as was Chad Cook. Thorpe testified that he made some buys off of Huffman.

{¶14} At trial, Thorpe testified that he had felonies for theft and falsification and had had drug charges twenty years previously. He testified that four years before he

had pleaded guilty to theft. Thorpe testified that, on October 20, 2010, appellant and Ron Fulk spent the night with him at his home. He testified that while he had had problems with appellant in the past, he had no problems with appellant on October 20, 2010. According to Thorpe, on the morning of October 20, 2010, he woke up and heard appellant and two others talking about cooking methamphetamine.  At some point, the people left.

{¶15} Later, when Thorpe was at Sampson's painting a building, a green van pulled in and Shane Huffman got out. A man and two women were with him. Huffman asked Thorpe if appellant was back and after being told no, the group carried guns, camping and other stuff into Sampson's house. Thorpe testified that when he asked Huffman what he was doing, Huffman indicated that he had robbed someone the night before. Thorpe testified that he then called the detective who was his contact, indicated that Huffman was there and that there were weapons in the house and was told to stay out of Sampson's house until further order.

{¶16} According to Thorpe, another detective called him shortly thereafter and told him to walk down the road and talk to the detective, who was parked nearby.  The detective asked Thorpe to make a buy from appellant and then searched Thorpe, gave him a recording device and gave Thorpe money for the buy. The detective told Thorpe to go in and ask appellant if he could buy up to two grams. Thorpe testified that he walked into Sampson's house without knocking and that appellant, Shane Huffman and Ron Fulk were inside. Thorpe then purchased 1.8 grams of methamphetamine for $200.00. At the time of the buy, Huffman was at the other end of the kitchen table and Ron Fulk was to the left of the same while appellant was at the table standing up.

Thorpe testified that there was a rifle to the left of him leaning against the wall over by where Ron Fulk was standing. He further testified that he saw a small pistol on the table down by Huffman. The following is an excerpt from his testimony:

**{¶17}** "A. A small, looked like a small pistol was still on the table. That was down by Shane.

**{¶18}** "Q. On the table?

**{¶19}** "A. Yes.

**{¶20}** "Q. Okay, and is there any conversations going on about the firearms as you're in there?

**{¶21}** "A. No, not really - - not really. I mean I never heard nothing then.

**{¶22}** "Q. Okay.

**{¶23}** "A. I just went in to do what I was asked to do and then leave.

**{¶24}** "Q. Did you see anything else? Did you see any other firearms inside?

**{¶25}** "A. I seen a - - I seen a rifle they had. They said it was a 30.06. The pistol - - now the first time I was over there, I seen the other gun before Danny got there when I said the dirty guy and the two girls were in there.

**{¶26}** "Q. Okay.

**{¶27}** "A. And they started carrying stuff in, and that's when I called Kris and said there are weapons in there.

**{¶28}** "Q. Uh huh.

**{¶29}** "A. I seen three guns then.

**{¶30}** "Q. Okay. That gun's gone by the time you go back?

**{¶31}** "A. That gun was gone, yeah." Transcript at 213-214.

**{¶32}** Thorpe testified that he then walked out and met the detective and handed the drugs to him. Before meeting up with the detective, Thorpe stopped at his house to get cigarettes.

**{¶33}** On cross-examination, Thorpe testified that he had been charged with illegal assembly, a felony of the third degree, and that, in exchange for his agreement as a confidential informant, the charge was to be reduced to a felony of the fifth degree. He testified that he had bought the pseudo ephedrine for a friend in order to get money for medicine. Thorpe further denied having a key to Sampson's house and testified that there was no key to the same. He testified that he did not let Shane Huffman into Sampson's house and that Huffman had been there before, including the previous day. Thorpe testified that he then saw Huffman carrying in guns, tools and camping equipment and that appellant was not present at such time and did not come over until much later. Thorpe also testified that Huffman was trying to sell a 30.06 rifle for $150.00 and that the guy who took the shotgun said that he had sold it at Buckeye Lake. Thorpe, when asked, testified that appellant never said that the guns were his or that he was involved in acquiring them.

**{¶34}** Leonard Laughman testified at trial that he was friends with appellant and had known him for about two years. He testified that in October of 2010, he had contact with appellant a single time and that he came into contact with members of the Central Ohio Drug Enforcement Task Force on the same date. On the day in question, Laughman was with Laurie Hoffman and appellant. He testified that he came into contact with appellant at Dino Thorpe's house and that Laurie drove them there. Laughman testified that he spoke with appellant about purchasing methamphetamine

and that he then went to appellant's mother's house and purchased a gram. They then drove back to Thorpe's house. According to Laughman, appellant did not go into Thorpe's house. Laughman and Laurie picked up Thorpe's girlfriend and drove her to a gas station to purchase cigarettes. Laughman testified that he did not observe appellant with any weapons.

{¶35} After a SWAT team arrived to search Sampson's house, they found appellant, Fulk and Huffman inside the same. Appellant had digital scales and $200.00 in cash in his pocket. A 30.06 rifle was found leaning up against a filing cabinet in the corner of the kitchen. Testimony was adduced that the rifle was six feet from the kitchen table. After completing a search and inventory at the 30 Westview address, detectives went to the house where appellant had been living until he was kicked out on the day of his arrest and spoke to appellant's father. During a search, they found evidence of a meth lab in the garage, including salt, coffee filters, a hydrochloric gas generator, which was a plastic bottle with tubing inserted into the top, and drain cleaner.

{¶36} At trial, the parties stipulated that appellant had a prior felony conviction that precluded him from possessing a firearm.

{¶37} At the conclusion of the evidence and the end of deliberations, the jury, on April 21, 2011, found appellant not guilty of illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs, but guilty of aggravated trafficking in drugs and having a weapon while under a disability. The jury further found that appellant had a firearm on or about his person or under his control while committing the offense of aggravated trafficking. Pursuant to a Judgment of

Sentence filed on June 21, 2011, appellant was sentenced to an aggregate prison sentence of four (4) years and eleven (11) months.

{¶38} Appellant now raises the following assignments of error on appeal:

{¶39} "I. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND FAIR TRIAL AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION BECAUSE THE TRIAL COURT MISLED THE JURY BY INSTRUCTING THE JURORS THAT THEY COULD FIND APPELLANT TO BE IN CONSTRUCTIVE POSSESSION OF A RIFLE MERELY BY FINDING THAT HE HAD THE ABILITY TO EXERCISE DOMINION AND CONTROL OVER IT.

{¶40} "II. APPELLANT WAS DEPRIVED OF HIS RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION BECAUSE TRIAL COUNSEL PERFORMED DEFICIENTLY BY FAILING TO OBJECT TO THE MISLEADING SUPPLEMENTAL JURY INSTRUCTION REGARDING CONSTRUCTIVE POSSESSION OF THE FIREARM.

{¶41} "III. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION BECAUSE THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE THAT HE POSSESSED A FIREARM TO SUPPORT THE

CONVICTION FOR HAVING A WEAPON WHILE UNDER DISABILITY AND THE TRUE FINDING ON THE FIREARM SPECIFICATION.

**{¶42}** "IV. THE VERDICT OF GUILTY ON THE CHARGE OF HAVING A WEAPON UNDER DISABILITY AND THE TRUE FINDING ON THE FIREARM SPECIFICATION ARE NOT SUPPORTED BY THE WEIGHT OF EVIDENCE."

I

**{¶43}** Appellant, in his first assignment of error, argues that he was deprived of his rights to due process and a fair trial because the trial court erred in instructing the jury that they could find appellant to be in constructive possession of the rifle merely by finding that he had the ability to exercise dominion and control over the same.

**{¶44}** Crim.R. 30(A) provides that a party may not assign as error the giving or failure to give an instruction unless he objects before the jury retires to consider its verdict. Where a defendant fails to raise a timely objection to the giving or failure to give an instruction, the defendant has waived all but plain error. *State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, (1978), ¶ two of the syllabus. Because appellant never raised any objection to the trial court's instruction to the jury, appellant has waived all but plain error.

**{¶45}** At trial, the trial court gave the following instruction on constructive possession:

**{¶46}** "Constructive Possession. Possession may be actual or constructive. A person has constructive possession of an item when he has knowledge of the presence

of the item, and <u>the ability</u> to control its use and/or exercise dominion over it.  While ownership may constitute possession, ownership is not necessary.  A person may possess or control property belonging to another.

**{¶47}** "It is not necessary that there be actual physical possession.  Possession may be constructive.  Constructive possession exists when the individual possesses dominion and control over an object even though the object may not be in his immediate physical possession."  Transcript at 423-424.  (Emphasis added).

**{¶48}** Possession "means having control over a thing or substance." R.C. 2925.01(K). Possession may not be inferred solely from mere access to the thing or substance, or occupation of the premises upon which the thing or substance was found. *Id.* Possession may be actual or constructive. *State v. McShan,* 77 Ohio App.3d 781,783, 603 N.E.2d 1076, (8th Dist. 1991). Constructive possession is demonstrated if the contraband is in a defendant's dominion or control. Id. at 783.  *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351, (1976). "A person may constructively possess a substance or object if he 'knowingly exercise[s] dominion and control over an object, even though that object may not be within his immediate physical possession[,] or [if he has] knowledge of the presence of the object.'"  *State v. Woodson,* 9th Dist. No. 07 CA 0044, 2008-Ohio-1469, ¶20, citing *State v. Hilton,* 9th Dist. No 21624, 2004-Ohio-1418, at paragraph 16 quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, (1982), ¶ one of the syllabus.  The State may prove dominion and control through circumstantial evidence. See *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000).  Circumstantial evidence that the defendant was located in very close

proximity to the contraband may show constructive possession. See *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248, (8th Dist. 1993).

**{¶49}** In *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d (1976), cited by appellant, the Court held that "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediately physical possession."  Appellant now argues that the trial court, in instructing the jury that a person has constructive possession of an item when he has knowledge of the presence of the item, and the <u>ability</u> to control its use and/or exercise dominion over the same, misstated *Wolery*.

**{¶50}** However, in *Wolery*, the appellant, who was convicted of receiving and concealing stolen property, argued, in part, that the trial court had erred in its response to a question propounded by the jury during the course of deliberations.  The jury, in a written question to the trial court, asked whether receiving and concealing extended to the point of materially benefitting from the act without physical possession of the merchandise.  The trial court responded in writing as follows:

**{¶51}** "'Not necessarily. To prove the receipt of stolen property it is not necessary to show that it came into the actual or manual possession of the defendant. It is sufficient in that regard to show it came into the custody or control of the defendant so that he <u>could </u>direct the disposal of it. The mere fact, however, that the property was in the possession of the defendant, if such should be the fact, would not alone constitute the receiving of the property. Receiving implies some act on the part of the defendant by which the property came into his possession with his knowledge, consent, and approval.'" (Emphasis added).

**{¶52}** The Ohio Supreme Court, in *Wolery*, stated that the trial court's response to the jury's question was a correct statement of law. We find that the use of the word "could" in the trial court's above response to the jury in *Wolery*, implies the ability to exercise dominion or control over an item. We find, therefore, that the trial court did not err in instructing the jury that they could find appellant to be in constructive possession of the rifle merely by finding that he had the ability to exercise dominion and control over the same.

**{¶53}** Based on the foregoing, appellant's first assignment of error is, therefore, overruled.

II

**{¶54}** Appellant, in his second assignment of error, argues that he received ineffective assistance of trial counsel because trial counsel failed to object to the jury instruction regarding constructive possession.

**{¶55}** To show ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052 (1984). First, he must show that his trial counsel engaged in a substantial violation of any essential duty to his client. *State v. Bradley*, 42 Ohio St.3d 136, 141, 538 N.E.2d 373, quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976). Second, he must show that his trial counsel's ineffectiveness resulted in prejudice. *Bradley,* at 141–142, quoting *Lytle,* at 396–397. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. *Bradley,* ¶ three of the syllabus.

{¶56} Based on our disposition of appellant's first assignment of error, we find that appellant cannot show that he was prejudiced by his counsel's failure to object to the jury instruction. Appellant's second assignment of error is, therefore, overruled.

III, IV

{¶57} Appellant, in his third assignment of error, argues that there was insufficient evidence supporting his conviction for having a weapon while under disability and the true finding on the firearm, specification. In his fourth assignment of error, he contends that the verdict of guilty on the charge of having a weapon while under disability and the true finding on the firearm specification are not supported by the weight of the evidence.

{¶58} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, (1st Dist. 1983).

{¶59} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), ¶ two of the syllabus.

**{¶60}** Appellant argues that there was very little evidence supporting a finding of constructive possession and notes that appellant was merely present in the room with the rifle. Appellant further argues that the evidence indicated that Huffman exercised actual dominion and control over the rifle and argues that the residence was under the dominion and control of Huffman, not appellant. Appellant also maintains that the jury might have lost its way "due to the superfluous evidence that there was a handgun on the kitchen table when the drug transaction occurred" and that the handgun was closer to appellant than the rifle he was charged with possessing.

**{¶61}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of having a weapon while under a disability and the firearm specification and that the jury did not create a manifest injustice by convicting appellant. Testimony adduced at trial that appellant and others inside the house on Westview were trading and selling items to each other. As is stated above, appellant was at the kitchen table when he sold drugs to the confidential informant. At the time, a rifle, which was in plain view, was leaning up against a nearby wall and was approximately six feet away from the table. Appellant, therefore, was in close proximity to the rifle while selling drugs. There was no evidence that Huffman or anyone else had more control or dominion over the premises than appellant.

**{¶62}** Based on the foregoing, we find that the verdict of guilty on the charge of heaving a weapon while under disability and the finding on the firearm specification were not against the sufficiency or manifest weight of the evidence.

**{¶63}** Appellant's third and fourth assignments of error are, therefore, overruled.

**{¶64}** Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.

By: Edwards, J.

Delaney, P.J. and

Gwin, J. concur

_____

_____

_____

JUDGES

JAE/d0124

[Cite as *State v. McVey*, 2012-Ohio-2520.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                :

                           :

            Plaintiff-Appellee    :

                           :

                           :

-vs-                          :        JUDGMENT ENTRY

                           :

DANIEL L. McVEY, II       :

                           :

           Defendant-Appellant  :        CASE NO. 11CA0077

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

                        JUDGES