[Cite as *State v. Williams*, 2012-Ohio-3355.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97235**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JL WILLIAMS, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550021

**BEFORE:** Blackmon, A.J., Boyle, J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 26, 2012

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Erica Barnhill
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, A.J.:

{¶1} Appellant JL Williams, Jr., appeals his conviction and assigns the following errors for our review:

**I. Appellant was denied the effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution.**

**II. Appellant's conviction is against the manifest weight of the evidence.**

{¶2} Having reviewed the record and pertinent law, we reverse the trial court's decision, vacate the conviction, and order Williams discharged. The apposite facts follow.

{¶3} On May 7, 2011, at approximately 4:45 a.m., police officers responded to a building located at 10210 Woodland Avenue, in Cleveland, Ohio based on a radio broadcast indicating that there were males with guns guarding an after-hour party. Upon arrival, the police observed two or three men in front of a building that appeared to have been an auto body shop or car wash. The men immediately retreated into the building, slammed the door, and refused entry to the police. Using a bull horn, the police ordered the occupants out of the building, but none complied.

{¶4} Moments later, an individual exited the building from a side door and was apprehended. The police then entered the building from the side door and discovered a night club spanning two floors, with between 100 to 200 people present. The officers

proceeded to conduct pat down searches of the patrons and to request identification. No weapons were found on any individual, but when Williams provided identification, his address matched that of the building, and the officers separated him from the patrons who were allowed to leave.

{¶5} After the officers directed the patrons outside, they continued to search the building, and discovered a bag containing approximately 13 ecstacy pills, as well as a jar containing marijuana on the second floor of the building. In addition, the officers recovered two guns on the second floor of the building, one in a storage room off the bar area, and the other near a stair well. One gun was a starter pistol and the other a .45 caliber revolver.

{¶6} Upon searching two locked rooms on the first floor, which appeared to be used as bedrooms, the officers found some bullets in the room that Williams acknowledged was his room. The officers also found a notebook in the room containing notations about renting out the building for various functions. Thereafter, Williams was arrested.

{¶7} On May 16, 2011, the Cuyahoga County Grand Jury indicted Williams on three counts of drug trafficking and two counts of drug possession. The aforementioned counts had one-year firearm specification attached. In addition, the grand jury indicted Williams on one count of possession of criminal tools and one count of having weapons under disability.

**{¶8}** Williams pleaded not guilty at his arraignment and the matter proceeded to a jury trial on all counts except that of having weapons under a disability, which was tried separately to the court. Prior to the jury trial, the state dismissed the firearm specification from four of the five counts to which it had been previously attached. The state also dismissed the charge of possession of criminal tools. The jury acquitted Williams of all charges; the trial court found him guilty of having weapons while under disability and sentenced him to one year in prison.

## Manifest Weight of Evidence

**{¶9}** We begin with the first assigned error, wherein Williams argues his conviction for having weapons while under disability was against the manifest weight of the evidence.

**{¶10}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id*. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387,**

**678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."** *Id*. **at 387, 678 N.E.2d 541, citing** *Tibbs v. Florida* **(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.**

**{¶11}** In bifurcated proceedings, the trial court found Williams guilty of R.C. 2923.13(A)(3), which provides that no person shall knowingly acquire, have, carry, or use a firearm while under disability. To "have" a firearm within the meaning of the weapons-under-a-disability statute, the offender must actually or constructively possess it. *State v. English*, 1st Dist. No. C-080827, 2010-Ohio-1759, ¶ 31.

**{¶12}** Possession may be actual or constructive. *State v. Brack*, 5th Dist. No. 2010CA00061, 2011-Ohio-2949. A person may constructively possess a substance or object if he "knowingly exercise[s] dominion and control over an object, even though that object may not be within his immediate physical possession[,] or [if he has] knowledge of the presence of the object." *State v. Woodson*, 9th Dist. No. 07 CA 0044, 2008-Ohio-1469, ¶ 20, citing *State v. Hilton*, 9th Dist. No. 21624, 2004-Ohio-1418. However, possession may not be inferred solely from mere access to the thing or substance, or occupation of the premises upon which the thing or substance was found. *State v. McVey*, 5th Dist. No. 11CA0077, 2012-Ohio-2520.

**{¶13}** In the instant case, the trial court reasoned that bullets found in Williams's bedroom and the two guns found elsewhere in the building were conclusive evidence of his guilt. We are not persuaded.

{¶14}   At trial, the evidence established that a Colt .38 caliber revolver and a Smith and Wesson 45 automatic hand gun were recovered on the second floor of the premises, while bullets were discovered in Williams's bedroom located on the first floor of the building.   Interestingly, the state presented no evidence to establish that the bullets found in Williams's bedroom were compatible with either of the guns found on the second floor of the building.

{¶15}   In addition, the evidence established that there were approximately 100 to 200 patrons present in the building when the police arrived.   Any of these patrons arguably had access to the two guns that were discovered.   In fact, the jury acquitted Williams of all charges; at least the jury did not believe that he   actually or constructively possessed or intended to traffic the drugs discovered on the premises.   Analogously, any of the more than 100 patrons in the building could have also brought the guns and discarded them as soon as the police arrived.

{¶16}   Further, at trial, Sergeant Larry Russell testified as follows about the notebook found in Williams's bedroom:

> **\* \* \* next to the bed — between the bed and the night stand here, there was a notepad, and it said "Needs a hall, rent a hall for any occasion." It seemed like a kind of planning-type of a book for hall rental and also some promotional-type activities that he was trying to plan, writing things down like.** Tr. 225

{¶17} The above excerpt shows that Williams was renting out the building for various events.   However, the state presented no evidence that Williams hosted the party or participated in the party.   For example, there is no evidence that Williams provided the

liquor or the food, or collected money from the attendees. For all intents and purposes, Williams's sole function that night could have been to open the building for the people giving the party and then lock it up when the party was over.

{¶18} Likewise, despite the fact that one of the guns was found off the area near the bar, there was no evidence presented that Williams was acting as the bartender that night or was anywhere near the bar. Consequently, we conclude that none of the evidence presented conclusively established that Williams constructively possessed either of the guns discovered in the building. As such, Williams's conviction was against the manifest weight of the evidence. Accordingly, we sustain the second assigned error.

{¶19} Our disposition of the second assigned error renders the remaining error moot. App.R. 12(A)(1)(c).

{¶20} Judgment reversed, conviction vacated, defendant discharged.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
KATHLEEN ANN KEOUGH, J., CONCUR